WILLIAM JOHNSON *v.* GEORGE C. WORDEN.

*Payment. Discharge in Bankruptcy. Conditional Sale.*

It was submitted to arbitration whether the plaintiff should pay over to the defendant's assignee in bankruptcy the amount of a certain payment which the defendant made before the filing of his petition in bankruptcy, on a claim the plaintiff held against him, and awarded that he should, which he did accordingly. *Held,* that the defendant was bound by such award, and that the plaintiff's claim was in no part satisfied by such payment by the defendant.

The claim of a conditional vendor for an illegal sale of the property by the vendee, is not barred by the vendee's discharge in bankruptcy.

And if such vendor prove his claim for the contract price of such property in bankruptcy, he does not thereby lose his lien upon the property.

TROVER for a yoke of oxen. Plea, the general issue, and trial by jury, September term, 1873, BARRETT, J., presiding.

The evidence on both sides concurred in showing, that on the 16th of January, 1871, the plaintiff sold said oxen to the defendant conditionally, and delivered them into his possession, receiving therefor a cow valued at $40.00, and the defendant's written memorandum of sale for $125, containing the stipulation that said oxen were to be and remain the property of the plaintiff until said $125, with interest thereon, should be fully paid, which said

58

memorandum was never recorded in the town clerk's office of the town where either the plaintiff or defendant resided; that on February 23, 1871, the defendant exchanged said oxen with one Stratton, for a pair of four year old stags, of which the plaintiff had no knowledge until some five or six weeks afterwards; that the plaintiff never authorized such exchange, and never assented thereto or ratified the same, but when informed thereof, expressly dissented therefrom; that said oxen at the time of the conversion, were worth $170, and that the defendant had never paid the balance due therefor as evidenced by said memorandum, or any part thereof.

The defendant's evidence tended to show, that at the time he purchased said oxen they were seven years old, and that it was then expressly agreed by parol, that he might trade them into something younger if he had opportunity; that at that time he had in his possession a pair of four year old stags belonging to said Stratton; that soon after, one of said stags was accidentally killed, and that on the 23d of said February, in settlement with said Stratton, he exchanged said oxen for the stags and $35 to boot; that in a few days thereafter he sold the remaining stag to one Morse for $62, taking said Morse's written memorandum of sale therefor, conditioned that said stag was to be and remain the property of the defendant until said $62 should be paid; that on the 11th of March, 1871, the defendant informed the plaintiff of the disposition he had made of the oxen, and that the plaintiff expressed himself satisfied therewith, and that it was then agreed that the plaintiff should receive the $62 due from Morse, and apply it upon the defendant's obligation for the oxen and that the defendant should see Morse, and exchange the memorandum of sale which the defendant held against him for his promissory note for $62, payable to the plaintiff, when the plaintiff was to indorse the amount of said note upon the obligation he held against the defendant; that matters ran along until June 29, 1871 —the defendant not having in the meantime seen Morse—when the defendant found himself heavily in debt, and without sufficient means to discharge his indebtedness, and that by the advice of counsel he called on the plaintiff as he had upon his other credi-

tors, for the purpose of obtaining his consent to discharge him from his liabilities upon his executing an assignment for the benefit of his creditors; that the plaintiff refused to enter into such compromise, but insisted that the defendant should assign to him said claim of $62 against Morse, which the defendant still held, to which the defendant objected as being in fraud of his other creditors; but upon further importunity by the plaintiff, finally did do so, and the plaintiff endorsed the amount thereof on the defendant's obligation for the oxen; that on the next day, the plaintiff sued out a writ of attachment against the defendant, upon this and other claims he had against him, and caused all the defendant's property to be attached thereon; that on the 10th of July, 1871, the defendant filed his petition in bankruptcy, and was duly adjudged a bankrupt on the 19th day of July, 1871; that on the 17th of August, 1871, the first meeting of creditors was held, and an assignee elected, at which meeting the plaintiff appeared and proved his claims, including the balance shown to be due on said contract of sale, deducting said indorsement of $62; that subsequently, a second and a third meeting of creditors was held, and a dividend declared and ordered to be paid, which the assignee paid to all the creditors except the plaintiff, who refused to receive the same although tendered him by the assignee; and that on the 17th of October, 1872, the defendant, having procured the requisite assent of creditors, was duly discharged in bankruptcy.

In reply, the evidence of the plaintiff further tended to show, and it was not controverted, that previous to the last meeting of creditors, the assignee demanded of him the $62 indorsed on said contract of sale as aforesaid, and that the plaintiff refused to pay over the same, but that with the consent of the assignee, they submitted the question of the plaintiff's liability, to Judge Underwood, register in bankruptcy, who decided that he should pay the same to the assignee, which he did, having previously collected said amount from said Morse; that on account of said $62, the plaintiff had made no proof against the estate in bankruptcy, and had received no security or satisfaction whatever.

The defendant requested the court to charge the jury:

1. "That if the plaintiff reserved a lien upon the oxen, as the evidence shows, and while said lien was subsisting the defendant went into bankruptcy, it was at the option of the plaintiff to stand upon his title by virtue of said lien, or prove his claim in bankruptcy; but if he adopted the latter course, it amounted to a waiver of his lien and title, and this action cannot be maintained.

2. "That if upon the insolvency of the defendant coming to the knowledge of the plaintiff, he received the Morse claim in the manner detailed, and indorsed the amount upon the contract of sale which he held against the defendant, it operated as a payment to that amount, even though the plaintiff subsequently paid it over to the assignee in the manner and under the circumstances detailed in the plaintiff's testimony.

3. "The proving of a claim originally resting in tort, in a proceeding in bankruptcy, and its allowance by the district court, so changes the nature thereof that it is an abandonment by the creditor of his lien or title to the thing itself—a waiver of the tort.

4. "That the defendant's discharge in bankruptcy, is another reason why this action cannot be maintained—this very claim was proved and allowed by the district court."

All controverted questions of fact arising upon the evidence were properly submitted to the jury. As to the subject of said requests, the court charged the jury, that the transaction about taking the Morse note and getting the pay on it, did not constitute payment, because what the plaintiff thus received was taken away from him by his assignee in bankruptcy; and that the proceedings in bankruptcy did not defeat the plaintiff's right of action. In all other respects the charge was full and satisfactory. So far as the court failed to charge as requested, and to the charge as stated, the defendant excepted. Verdict for the plaintiff.

*Clark & Haskins*, for the defendant.

We understand the rule to be, that upon all questions arising under the bankrupt act in state courts, either directly, incidentally, or collaterally, the law is to be treated and administered in the same respect as if it were a statute of the state. The defendant was entitled to have the jury instructed in accordance with his first and third requests. Barring any proceedings in bankruptcy, the plaintiff might have enforced his claim against the defend-

ant in an action *ex contractu* or *ex delicto.* Whatever might have been the plaintiff's remedy against the defendant, or whatever the nature of his claim growing out of the transaction between them, it was one clearly provable under the bankrupt law, and not a claim of the character mentioned in § 33 of the bankrupt act. Bump Bankruptcy, ch. 5, pp. 68, 69, § 19, p. 356, § 33, p. 456.

The plaintiff elected to treat his claim-note, or written contract of sale, as his demand against the defendant, growing out of the sale by the plaintiff and the subsequent conversion by defendant of the oxen, by proving such demand in the proceedings in bankruptcy. And having made his election to obtain satisfaction of his demand under the bankruptcy proceedings, it was a waiver of his right to claim satisfaction for the oxen of the defendant in any other proceeding inconsistent with such election. Bump Bankruptcy, ch. 5, pp. 92, 94, § 21, p. 382; 3 Petersd. Abr. 474, and cases cited.

The court erred in refusing to charge the jury agreeably to defendant's second request. And the charge of the court as shown by the bill of exceptions, relative to the effect of the payment to the plaintiff of the Morse claim, was equally erroneous.

There was error in the refusal of the court below to charge the jury in accordance with the fourth request of defendant. A discharge in bankruptcy duly granted, is a full and complete defence to all suits brought to enforce any debt, claim, liability, or demand (with the exception of those mentioned in § 33) existing and provable at the time of the filing of the debtor's petition and his adjudication as a bankrupt. Bump Bankruptcy, § 32, p. 453, § 34, p. 460, *et seq.*

*J. G. Eddy* and *A. Stoddard*, for the plaintiff.

Upon the facts stated in the exceptions, it is well settled, that title to the oxen would not vest in the defendant until the price was fully paid. *West* v. *Bolton*, 4 Vt. 558, and numerous subsequent cases. And the recovery of judgment for the price would not divest the plaintiff of title. *Root* v. *Lord*, 23 Vt. 568. As between the parties to the sale, it is immaterial that the memo-

randum of sale was not recorded. Laws of 1870, No. 63. Proving the claim in bankruptcy, would no more affect the vendor's title than recovering judgment in a state court.

Receiving the Morse claim did not operate to extinguish any part of the plaintiff's demand for the oxen, because the proceedings in bankruptcy made the whole transaction void, and because by mutual consent the transaction was rescinded, and the money given up to the assignee, and appropriated for the defendant's benefit.

The question whether the discharge in bankruptcy is a bar to this suit, does not arise on the exceptions; but, if it did, it could not avail the defendant here. The sale of the oxen by the defendant, was a fraud, and therefore the discharge does not operate as a bar.

The opinion of the court was delivered by

WHEELER, J. As this case is here understood, the defendant was himself a party to the submission to Judge Underwood. Having made that submission, he is bound by the decision, not because he had any authority to submit claims of the assignee, nor because Judge Underwood had any authority as register over the question, but because he could submit his own claim to arbitration, and Judge Underwood had authority as an arbitrator. The right of the defendant to have the avails of the Morse claim go in satisfaction of the plaintiff's demand, was decided against the defendant, and the plaintiff thereby lost all benefit of the avails, and his claim was left unsatisfied, the same as if he never had received them.

When the defendant sold the oxen, he did it in fraud of the plaintiff's right to them. The plaintiff had entrusted him with them, and this disposition of them in that way, was a breach of the trust the plaintiff had placed in him. The plaintiff's claim in controversy in this case, is founded upon that breach of trust, and this claim, even if it had been proved in the bankruptcy proceedings, would have been saved from being barred, by the provisions of the 33d section of the bankrupt act.

By the contract of conditional sale between the plaintiff and the

defendant, the plaintiff had his debt against the defendant for the oxen, and also a right to the oxen till his debt should be fully paid. When the defendant converted the oxen by selling them, the plaintiff had his right of action for the conversion, in lieu of the oxen, and could hold that, as well as his debt, till the debt should be paid. When he proved the debt for the oxen, he was pursuing that one of his remedies, and could do so without losing the other, until his right to his pay for the oxen should be fully satisfied. Not having been paid in that way, he had a right to pursue the other remedy, as he has done in this case.

There was no exception taken upon the subject of damages, and it is not necessary to consider whether the amount of the dividend on the plaintiff's claim, tendered by the assignee, should have operated as a satisfaction of so much of the plaintiff's debt ; nor is it necessary to consider whether plaintiff's measure of damages should have been limited to the amount due on his debt.

Judgment affirmed.