## HAMMOND & BURT *v.* S. C. NOBLE.

*Bankruptcy. Debt Created by Fraud.* Sec. 5117, R. S. U. S. *Evidence, Actual, Constructive Fraud. Certified Execution. Juror. New Trial.*

1. The plaintiffs, as an accommodation to themselves, gave an order to the defendant directing their debtor to pay him what was due them. He collected and used the money by mingling it with his own; and in a few days afterwards was adjudged a bankrupt. After his discharge, in an action to recover the money, the court below found that there was no evidence tending to show actual fraud or fraudulent intent. The plaintiffs testified that when the order was given they told him "to keep·the money until they called for it"; the defendant testified that they told him "to keep and use the money until they called for it." The jury found that the plaintiffs were right as to the instructions given; *Held*, that the defendant's duty was that of a bailee without hire; that his use of the money was a conversion of it, and a fraudulent act; that the debt was " created by fraud," within the meaning of the Bankrupt Act—R. S. U. S. s. 5117 —and not discharged.

2. Evidence was not admissible to show the cause and manner of the defendant's failure, for the purpose of proving that there was no fraud.

3. The court in its charge to the jury placed the case on the ground that it came within the fiduciary clause of the Bankrupt Act; but this was harmless error, as the verdict brought it within the fraud clause.

4. *Neal* v. *Clark*, 95 U. S. 704—constructive fraud distinguished.

5. A certified execution was issued.
13

6. JUROR, QUALIFICATION OF. NEW TRIAL. It is presumed that a juror is competent until the contrary is proved. It was not decided whether common reputation among family connections is admissible to prove the time or place of the juror's birth: because if the evidence had been received it was not sufficient to establish his alienage.

GENERAL ASSUMPSIT. Plea, the general issue, and notice of special matter. Trial by jury, April Term, 1880, Franklin County, ROYCE, J., presiding. Verdict for the plaintiffs.

It appeared that on the 1st day of October, 1877, the Central Vermont Railroad Company was indebted to the plaintiffs in about the sum of $3,600; that the plaintiffs resided in Franklin, at quite a distance from the offices of the said railroad company; that it was the custom of said company to pay bills of the same kind as that of the plaintiffs in installments, when most convenient to do so; that the plaintiffs had had other bills against said company prior to this one, and had experienced considerable difficulty in collecting the same, on account of the distance, and as the company was frequently not ready to pay; that the defendant was a dealer in dairy produce at St. Albans; that the plaintiffs requested the defendant, as a matter of accommodation to them, to collect said indebtedness for them, by applying to the company frequently for installments; that the defendant consented to do so, and was not to receive any compensation or benefit for so doing; but that he undertook said business solely for the accommodation and convenience of the plaintiffs, and to save them the trouble and expense of going to St. Albans personally to collect the money; that the plaintiffs called at the office of the defendant, in pursuance of said arrangement, on October 2, 1877, the defendant at the time being out of his office, and made and left for the defendant an order, of which the following is a copy:

"ST. ALBANS, Vt., October 2, 1877.

"*Central Vermont Railroad,*

"Will please pay to S. C. Noble, or order, the whole amount due to us.　　　　　　　HAMMOND & BURT."

Immediately after the plaintiffs left the office, the defendant came in, and the order being handed to him, he stepped to the door and called to the plaintiffs, who were then part way across the street on their way to the depot, and asked them what he should do with the money when he had collected it. The plaintiffs testified, and their testimony tended to show, that they then told the defendant "to keep the money until they called for it."

Upon this point the defendant testified that the plaintiffs then told him "to keep and use the money until they called for it," or words to that effect. The defendant introduced other evidence tending to show that it was the understanding and intention of the parties that the defendant should be at liberty to use the money.

The defendant presented said order at the office of the treasurer of said railroad company, and on October 3, 1877, collected $500; and on October 12, 1877, collected $500; and receipted therefor to said company in his own name.

Upon the several days when said sums were received by the defendant, he entered the same in his regular cash account, mingled the same with his other money, used it, and took the same care of it that he did of his own funds.

On the 6th day of November, 1877, the defendant was duly adjudged a bankrupt on the petition of his creditors, by the U. S. District Court for the District of Vermont; and the defendant made an offer of composition to his creditors, which was accepted and confirmed by them and the court; and the terms of the composition were duly complied with. The bankruptcy and composition had the effect to discharge the defendant from the debt sought to be recovered in this cause, unless said debt is of a character or kind excepted from the operation of such discharge by the provision of said bankrupt law.

The plaintiffs did not accept of said offer, nor consent to said composition; and did not accept of the money tendered

pursuant to said composition proceedings; and the same was deposited in the Bankrupt Court.

The defendant offered to show that he was sending produce to one Mitchell of Boston, and had sent almost entirely to him; that there was a large number of Mitchell's acceptances at that time outstanding, on one, two, and three months' time; that the defendant had no suspicion that Mitchell was going to fail; but at the time Mitchell failed he was indebted to him $19,000 or $20,000, taking these acceptances and other papers; and by reason of the failure of Mitchell the defendant failed; that before the failure of Mitchell was announced to the defendant on the 26th day of October, 1877, by telegraph from Boston, he had no expectation he was going to suffer any loss from any source, and he had used this money; that his account was kept by the Vermont National Bank, through which bank he made drafts to Mitchell of Boston, who accepted them; that by reason of the failure of Mitchell these drafts came back to the account, which rendered it there very largely overdrawn; and this money in question, which went into his cash and bank account generally, being a part of his assets, he could not separate it from any other part of his cash. And the defendant claimed that this testimony would show there was no fraud or want of good faith on his part in using the money in question.

. To this testimony the plaintiffs objected, and the same was excluded by the court. There was no evidence tending to show any actual fraud or any. fraudulent intent in the defendant's mingling the money with his own, and using it.

At the close of the evidence the defendant moved for a verdict; which motion was overruled.

The defendant requested the court to charge the jury that the order delivered by plaintiffs to defendant was evidence tending to show that. the defendant had the right to use the money collected thereon, until called for by the plaintiffs.

The court refused so to charge, and did charge the jury that there was but one question of fact in the case, and that was as to what direction the plaintiffs gave to the defendant when he stepped to the door and asked them what he should do with the money when it was collected. And the court said: "I am disposed to rule and direct you, if you should find from a fair balance of the testimony that that was the direction the plaintiffs gave to Mr. Noble, that when he received the money he was to keep it until they demanded it; that when Noble received the money, he received it in a fiduciary character; that is, he received it in trust, to hold it in trust for the parties; and that the plaintiffs would be entitled to recover."

*Noble & Smith* and *A. P. Cross*, for the defendant.

The burden was on the plaintiffs to show that the debt was not discharged. *Sherwood* v. *Mitchell*, 4 Denio, 435; *Burnham* v. *Noyes*, 125 Mass. 85. The word "*fraud*" in the Bankrupt Act—R. S. U. S. s. 5117—means positive fraud, or fraud in fact, involving moral turpitude, or intentional wrong, and not implied fraud, or fraud in law. Justice HARLAN in *Neal* v. *Clark*, 95 U. S. 704. *See Hennequin* v. *Clews*, 111 U. S. 676. But the exceptions expressly find that there was no fraud or fraudulent intent on the part of the defendant. The words "*fiduciary character*" have also been clearly defined by the same court, and are construed to mean technical trusts. *Chapman* v. *Forsyth*, 2 How. 302. The Supreme Court of the United States has been followed by the State courts. *Cronan* v. *Cutting*, 104 Mass. 245; *Phillips* v. *Russell*, 42 Me. 360; *Hennequin* v. *Clews*, 77 N. Y. 427; *Palmer* v. *Hussey*, 87 N. Y. 303; *Keime* v. *Graff*, 17 N. B. R. 319; *Wells* v. *Lamprey*, 16 N. B. R. 205; *Green* v. *Chilton*, 57 Miss. 598; *McAdoo* v. *Lummis*, 43 Tex. 227. There was error in excluding the evidence. The cases of *Johnson* v. *Worden*, 47 Vt. 457, and *Darling* v. *Woodward*, 54 Vt. 101, are distinguishable, in that in those the fraud was active.

The juror's grandfather lived in Canada from 1813 to 1833, when he died. In the absence of proof, the presumption is, that he was a citizen of Canada, and that he lived there prior to 1813. The juror's father resided in Canada from about 1813 to within a few years of his death. The juror was born in Canada, and—applying the same presumption—he was a citizen of that country. *Quinn* v. *Halbert,* 52 Vt. 353.

*H. C. Adams* and *R. H. Start,* for the plaintiffs.

The debt in this case was created while the defendant was acting in a fiduciary character. *Johnson* v. *Worden,* 47 Vt. 457; 12 B. R. 61; 11 B. R. 478; 17 B. R. 349; 5 B. R. 351; *Hefferom* v. *Joyner,* 13 Am. Rep. 281; *Flanagan* v. *Pearsons,* 19 Am. Rep. 40; 7 Wait Act. & Def. 165; *Gilreath* v. *Hastan Salt & Plaster Co.* 67 Ga. 702; *Herman* v. *Lynch,* 26 Kan. 435; S. C. 39 Am. Rep. 723, *n.* The defendant converted the money of the plaintiffs to his own use, and in fraud of their rights. The debt was created by the fraud and embezzlement of the defendant, and not discharged. The case is not different in principle from *Darling* v. *Woodward,* 54 Vt. 101. A certified execution may issue. *Langdon* v. *Brown,* 46 Vt. 512; *Baldwin* v. *Potter,* 46 Vt. 402; *Darling* v. *Woodward, supra.* A new trial should not be granted.

It is presumed that the juror was competent. *Keenan* v. *State,* 8 Wis. 132; Hill. N. Tr. p. 154; *Curtis* v. *Burdick,* 48 Vt. 166. The evidence was not admissible to prove the place of the juror's birth. *Carter* v. *Montgomery,* 2 Tenn. 216 (and citing the other cases in the opinion of the court on this point).

The opinion of the court was delivered by

Ross, J. The plaintiffs testified that they told the defendant, upon the occasion when they gave him the order on the railroad company, "to keep the money until they called for it." The defendant testified that they told him

Hammond & Burt *v.* Noble.

" to keep and use the money until they called for it." The jury found that the plaintiffs were right in regard to the instruction given by them to the defendant on that occasion. In view of these claims and the verdict, it must be held as settled by the verdict that, under the instructions, the defendant had no right to use the money; but that he was to keep the identical money received from the railroad company on the order for the plaintiffs; that he was to hold the money collected as the property of the plaintiffs. Instead of obeying the instructions, he used the money, by mingling it with his own, and depositing it in his own name, and to his credit in the bank. He thereby converted the plaintiff's property to his own use. By the conversion, and the unexpected revulsion in his business, the money was lost to the plaintiffs. The contention is, whether the indebtedness thus created was discharged by the defendant's composition in bankruptcy. The composition in this respect was just as effectual, and no more so, than a regular discharge in bankruptcy would have been. *Scott & Co.* v. *Olmstead,* 52 Vt. 211.

It is enacted by sec. 5117 R. S. U. S.: "No debt created by fraud, or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy." To avoid the effect of the composition proceedings, it is incumbent upon the plaintiffs to show that the debt which they are seeking to enforce was created in one of the ways named in the above quoted section. It is not contended that it was created by embezzlement, or by the defendant's defalcation as a public officer. The construction placed upon the last clause of this section, "or while acting in any fiduciary character," by the United States Supreme Court, in *Hennequin* v. *Clews,* 111 U. S. 676, is that this clause relates back to the preceding clause, and includes only debts created by defalcation while acting in a fiduciary character; in other words, that there must be a trust rela-

tion established independent of the transaction out of which the indebtedness arose. Being an United States statute, the construction placed upon it by the United States Supreme Court is binding upon this court. The learned judge who delivered the opinion admitted that the construction was contrary to a majority of the decisions of other courts in regard to this clause of the section, as well as to the decisions of the English court in regard to a similar provision in the English Bankrupt Act. But the decision finds support from the decision of the United States Supreme Court in regard to a similar provision in the Bankrupt Act of 1841. *Chapman* v. *Forsyth,* 2 How. 202. The County Court, in its charge to the jury, placed the case on the ground that it came within the fiduciary clause of the above quoted section. Although this was technical error, it was harmless, if the verdict of the jury brings it within the first, or fraud, clause of the section. On the verdict, it is within this clause under the decisions of this court in *Johnson* v. *Worden,* 47 Vt. 457, and *Darling* v. *Woodward,* 54 Vt. 101.

In each of these cases the defendant had converted to his own use, without the consent of the plaintiff, property which was in his possession, but which he held under the contract between him and the plaintiff, as collateral security for a debt which he owed the plaintiff. In *Johnson* v. *Worden,* the property, thus held and converted, was a yoke of oxen conditionally sold by the plaintiff to the defendant; and, in *Darling* v. *Woodward,* the property was twenty-nine sheep, of which the defendant had given the plaintiff a bill of sale as collateral security for signing a bank note. Before the note was paid the defendant, who had always retained possession of the sheep, sold them. The court held that the debts, thus created, were debts created by fraud, and not discharged by the respective discharges of the defendants in bankruptcy. From the circumstances attending the transactions in both cases, it may well be inferred that the defendants intended no wrong to the plaintiffs by such

sales, further than what arises from the sales, but supposed they should be able to meet the indebtedness for the payment of which the property was pledged, when it became due. But each was guilty of converting or using property, which, as between him and the plaintiff, he had no right to use in that way; and such use operated to deprive the plaintiff of his right thereto. No debt, in regard to such sheep or oxen, existed between the respective parties to the suits until such sale and conversion of the property by the defendant. The debts thereby created were held to have been created by active fraud. In the case at bar, the money collected was the money of the plaintiffs. The defendant, under the instruction found to have been given by the plaintiffs by the verdict of the jury, had no moral, nor legal right to use the money. His duty was that of a bailee, without hire, to keep it. While he discharged this duty, he was not the debtor of the plaintiffs in respect to the money. He only became their debtor when he wrongfully used the money. By using it, although he then intended to repay it to the plaintiffs, and felt that he was fully able so do so, he wrongfully deprived the plaintiffs of their property, and subjected them, by his voluntary, intentional act, to the liability of losing the same. He substituted his individual ability to respond in damages for property which belonged to the plaintiffs. Standing in the same relation to the money which the defendants in *Johnson* v. *Worden*, and in *Darling* v. *Woodward, supra*, did to the oxen and sheep; he, like them, wrongfully and intentionally used the property intrusted to him to the detriment and loss of the plaintiffs. In principle, the case at bar cannot be distinguished from the cases just cited. The decisions in those cases control the decision in this case. It is contended that inasmuch as the exceptions state "there was no evidence tending to show any actual fraud or any fraudulent intent in the defendant's mingling the money with his own and using it," that no actual fraud can be found in the

transaction. But this statement follows the statement that the defendant, on collecting the money, immediately mingled it with his own and used it. This of itself, as we have seen, was a wrongful and fraudulent act, which changed the relation of the defendant to the money from that of a bailee to that of a debtor. On the verdict, the debt thus created was not different in moral quality from that created by a clerk who, without consent or authority, uses his employer's money, or of a treasurer of a corporation who, in like manner, uses the money of the corporation,—each, at the time, intending and honestly supposing they were, and should be, able shortly to return the same, but who by losses, perhaps arising in the use of the money, find themselves bankrupts, and so defaulters. On this construction of the exceptions it is not contended that the case of *Neal* v. *Clark*, 95 U. S. 704, in which it is held, that the fraud, to avoid the effect of a discharge in bankruptcy, must be *actual fraud*, in distinction from constructive fraud, is in conflict with the decisions of this court on that subject. The facts in *Neal* v. *Clark* show a clear case of constructive, or implied fraud, involving no imputation of bad faith, moral turpitude, or intentional wrong. In the case at bar, there was bad faith, a betrayal by the defendant of the trust the plaintiffs had reposed in him, and an intentional act that was legally wrong. The debt thus created was not discharged by the defendant's composition with his creditors under the provisions of the Bankrupt Act of 1867.

The court properly excluded the offered evidence. The scope of that testimony was to show that, at the time the defendant committed the wrong, and thereby created the debt, he honestly supposed that he was amply able financially to repair the wrong, but unexpectedly found that he could not do so. It did not tend to change, in law, the character of the act out of which the debt arose.

The result is no error working injury is found in the trial

and judgment of the County Court, and that judgment is affirmed.

The defendant has preferred a petition for a new trial, on the ground that one of the jurors who tried the case was an alien, incompetent to act in that capacity, and that such incompetency was unknown to him, or his counsel, until after the rendition of the judgment in the County Court. It is incumbent on the defendant to establish such alienage. The competency of the juror will be presumed until the contrary is shown. *Keenan* v. *State*, 8 Wis. 132. To establish the incompetency, the petitioner has introduced as witnesses the juror and his uncle. The uncle testifies that he judges from the time at which he was told by his grandmother that his grandfather came to Canada, that the juror's father was born in Canada. The juror testifies that he has understood that he was born in Canada, but never was told so by his father, or mother, or any near relative that he can name, but was told by his father that he (the father) was born in Dutchess County, New York. It is contended by the plaintiffs, the petitioners, that hearsay, or common reputation among family connections who may be supposed to know, while admissible to establish pedigree, legitimacy, and marriage, is not admissible to establish particular facts like the time or place of one's birth. Such is the holding in the cases cited by the plaintiffs' counsel. *King* v. *Erith*, 8 East, 539; *Wilmington* v. *Burlington*, 4 Pick. 173 ; *Union* v. *Plainfield*, 39 Conn. 563; *Carter* v. *Montgomery*, 2 Tenn. Ch. 216; *Mima Queen* v. *Hepburn*, 7 Cranch, 290. In the latter case Chief Justice MARSHALL states the doctrine contended for.

In Wharton on the Law of Evidence, s. 208, the law of this subject appears to be carefully stated as follows: " Pedigree * * * includes not merely the relationships of a family, but the dates of the births, deaths and marriages of its members, when the object of such evidence is to trace relationship. Legitimacy is necessarily involved

in the scope of such declarations. It has been doubted whether the *place* of birth can be proved by such declarations. But the better opinion now is, that declarations are admissible to show such place when genealogical questions only are concerned. It is conceded, however, in settlement cases, hearsay proof of this class is inadmissible."

But whatever view is held in regard to the admissibility of such testimony in this proceeding, the testimony fails to establish the incompetency of the juror. All the testimony is to the effect that the grandfather was an American citizen. If the hearsay testimony is excluded, there is no evidence to show that the juror or his father was born in Canada. If the hearsay testimony is admitted, it shows that the juror's father was born and lived most of the time in the States, and if the juror was born in Canada, it was under such circumstances that it was decided, on the testimony of his uncles, that he was a voter in this State without naturalization; in other words, that he was not born an alien. In either view of the law relative to the admissibility of this class of testimony, it fails to establish the alienage of the juror.

The petition is dismissed with costs.