## NEWCOMB HUNTLEY ET UX.,

v.

## ANDREW E. DENNY ET AL.

GENERAL TERM, 1892.

*Settlement of executor's account in probate court. Conclusiveness. Trustee de son tort. Equity. Amendment. Interest. Appointment of guardian.*

1.  Where an executor, who had a life interest in an estate, in which several minors were interested, some four months after the decease of his testator presented his administration account to date, and had the same allowed by the probate court without the appointment of any guardian unto the minors, and some years after, his own interest having terminated and the estate being ready for distribution, presented a second account, in which he charged himself with the amount found in his hands upon the former settlement, and credited himself, among other things, with a gross sum for the care and support of the minors, which account was allowed by the probate court, and the estate settled and distributed in accordance therewith, a guardian having first been appointed unto the minors, and due notice having been given, such final settlement will be conclusive upon the minors and their representatives unless impeached for fraud.

2.  Whoever attacks the judgment of the probate court upon that ground must clearly and distinctly prove the fraud which he alleges.

3.  The executor may reimburse himself for what he has properly expended in the support of the minors, whether he advanced this amount out of his private means, or took it from the specific funds of the estate.

4. Nor is it necessary that any allowance should be made by the court in advance of the expenditure.

5. That probate court having jurisdiction of the settlement of an estate might, under the statutes in force in 1856, appoint a guardian unto a minor, interested in the settlement of such estate, although that minor resided in another probate district.

6. If a guardian of a minor pays over to a mother of that minor a fund belonging to his ward, and the mother receives it and retains it until her decease, knowing it to be the property of her child, she thereby becomes a trustee *de son tort* of the fund.

7. A bill in equity will lie against her estate to compel its payment.

8. No fact appearing which excuses her for not having paid over the fund, or which justifies her in having taken the use of it, simple interest should be added.

9. The bill not being framed with a view to a recovery on this ground, the cause is remanded, with leave to amend upon such terms as may be fixed by the chancellor.

Bill in equity. Heard at the March term, 1892, Washington county, upon the pleadings and a master's report. THOMPSON, Chancellor, dismissed the bill *pro forma* with costs. The orators appeal.

The purpose of the bill was to charge the estate of Harriet Pinney with the payment of certain funds, which it was alleged that she held in her lifetime as trustee for the oratrix, having derived the same from the estate of her former husband, Addison P. Mears.

The oratrix, Alma E. Huntley, and the defendant, Ellen M. Dutton, were the daughters of the said Harriet Pinney, of whose estate the defendant, Andrew E. Denny, was special administrator and executor. Harriet Pinney was the widow of Addison P. Mears, who deceased in 1849, leaving the said Harriet, his widow, two daughters, the said Alma E. Denny and Ellen M. Dutton, and a son, Hiram A., since deceased.

Addison P. Mears left a will by which he bequeathed to his aforesaid son, Hiram A., $140. The residue of. his property was bequeathed to his wife, the said Harriet, as long as she remained his widow, and upon her marriage, to his two daughters, Alma E. and Ellen M., in equal parts. The said Harriet was nominated as his sole executrix.

This will was duly probated and the said Harriet duly qualified as executrix, and took possession of the estate, which consisted entirely of personal property. Addison Mears died in August, 1849, and on November 24 the said Harriet presented to the probate court for the district of Chittenden, within which her husband had resided, and within which she was then residing, her administration account, which was allowed by the court. By that account it was found that there remained in her hands of the estate of her former husband, the sum of $1,120.91. It did not appear from the master's report whether in the settlement of this account any charge was made for the support of herself and family up to that time. At the time of the settlement of this account, Alma E. was three years of age, and Ellen M. seven years of age. It did not appear what the age of the son was, save that he was a minor. No guardian was appointed to any of these children.

In September, 1856, the said Harriet married one John Nesbit, and began living with him as his wife in the town of Northfield, without the district of Chittenden.

March 23, 1857, upon the application of the said Harriet, the probate court for the district of Chittenden appointed John Nesbit guardian of Alma E. and Ellen M., being at that time cognizant of the fact that the wards did not reside within the district of Chittenden.

April 17; 1857, the said Harriet presented to the probate court another administration account of the estate of Addison P. Mears. In this account she charged herself with the $1,120.91 found in her hands at the time of the settlement

of her former account, November 24, 1849, and credited herself with the legacy to her son, and with certain other items proper to be allowed, so that the balance due from her to the estate was $856.91. This she disposed of by crediting herself with $656.91 for the care and support of the said Alma E. and Ellen M., and with $100 paid to each of them. This account was allowed by the probate court, upon due notice.

It appeared that from the time of the allowance of her first account in 1849, down to the time of the allowance of her second account in 1857, the said Harriet had invested the money belonging to the estate of her former husband in certain real estate, so that the funds of that estate were actually so invested at the time of the settlement of her second account.

The said Harriet at the time of the settlement of her account, April 17, 1857, paid over to John Nesbit, as guardian of her two daughters, the said sum of $200.

The said Harriet and John Nesbit continued to live together as husband and wife until the year 1867, when they agreed to separate, and had a settlement, by the terms of which John Nesbit restored to her the $200 which she had formerly paid him as guardian of her two daughters. They subsequently were divorced, and she married one Joseph Pinney, whom she survived.

John Nesbit never accounted to either Alma E. or Ellen M. for the $200 received by him as their guardian, nor for any portion of the same; he received it from the said Harriet when he was appointed guardian, and paid it back to her when he separated from her, without consulting either of his said wards.

The said Harriet paid her daughter Ellen her $100, but never paid Alma anything whatever. Until she was twenty-one years old the said Alma lived with the said Harriet and was supported by her, rendering such assistance as a reason-

ably industrious girl could from the time she became old enough to work.

*F. Plumley* and *S. C. Shurtleff* for the orator.

*Wing & Fay* for the defendant.

The statutes in force from 1849 to 1857 provided that the probate court might make an allowance for the support of the widow and minor children. Gen. St., chap. 49, § 29; Gen. St., chap. 51, § 1.

Nor was it necessary that the amount of this allowance should be determined in advance. *Heirs of Sawyer* v. *Sawyer*, 28 Vt. 245.

The probate court having jurisdiction of the subject-matter and the parties in the settlement of April 17, 1857, its judgment in that respect is conclusive upon all those interested. Gen. St., chap. 49, § 29; Gen. St., chap. 51, § 1; R. L. §§ 2,109, 2,111; *Heirs of Sawyer* v. *Sawyer*, 28 Vt. 245; *Leach* v. *Estate of Leach*, 51 Vt. 440; *McClosky et ux.* v. *Gleason*, 56 Vt. 264; *Leach* v. *Peabody et al.*, 58 Vt. 485; 1 Dan. Ch., 662–664; *Cotlard* v. *Crane*, Brayton 18; *Robinson* v. *Admr. of Robinson*, 3 Vt. 283; *Rix, Admr.*, v. *Heirs of Smith*, 8 Vt. 365; *Probate Court* v. *Merriam*, 8 Vt. 234; *Sparhawk et al.* v. *Admr. of Buel et al.*, 9 Vt. 41; *Probate Court* v. *Vanduzer et al.*, 13 Vt. 135; *Giddings et al.* v. *Smith et al.*, 15 Vt. 344; *Adams* v. *Adams*, 22 Vt. 50; *Lawrence* v. *Englesby*, 24 Vt. 42; *Merriam* v. *Hemmenway*, 26 Vt. 565; *Richardson, Admr.*, v. *Estate of Merrill*, 32 Vt. 27; *Boyden* v. *Ward, Admr.*, 38 Vt. 628; *Lenehan et ux.* v. *Spaulding et al.*, 57 Vt. 115; *Noyes, Admr.*, v. *Phillips*, 57 Vt. 229; *Sowles* v. *Quinn*, 61 Vt. 354.

THOMPSON, J. The orators claim that the probate court had no jurisdiction to settle and allow the administra-

tion account of Harriet Mears Nesbit as executrix of the will
of Addison P. Mears at the alleged settlement of April 17,
1857, and that if it had jurisdiction, such settlement was
fraudulent as to the legatee, Alma Eliza Mears, now the
oratrix, Alma E. Huntley.

Addison P. Mears died in August, 1849. He left three
minor children, who were the oratrix, Alma E., born No-
vember 4, 1846, the defendant, Mary Ellen. Mears, now
Dutton, born December 16, 1842, and a son, Hiram Addi-
son Mears.

The estate of Addison P. Mears consisted wholly of per-
sonal property. By his last will and testament he bequeathed
$140 to his son Hiram, and the residue of his estate to his
wife Harriet so long as she should remain his widow and no
longer, and after she ceased. to be his widow, to his two
daughters, Alma and Mary, equally.

November 24, 1849, the widow Harriet, as executrix of
the will, presented her administration account to that date,
and the same was allowed by the probate court for the
district of Chittenden, in. which district the testator resided
at the time of his decease. At the time of this settlement
the legacy to Hiram was not paid, nor was its payment. de-
creed by the court. The oratrix, Alma E., was then only
a few days over three years of age, and the defendant,
Mary E., was then still under seven years of age. No de-
cree for an allowance for the expenses of their support until
they should attain the age of seven years was made at this
settlement. This settlement was not a final settlement of
the administration of the estate by the executrix. It does
not appear that a guardian had then been appointed for
either of the minors named in the will, so that notice of a
final settlement of administration could be given as required
by R. S., ch. 50, § 13, then in force. No partition or divi-
sion could then be made without the appointment of a guar-
dian to all minors interested in the estate to be divided. R.

S., ch. 53, § 12. By the will there was an absolute bequest to the minor Hiram, and the two minor daughters had at least a conditional interest in the estate. R. S., ch. 53, § 1, required that before any partition or division of any estate among the heirs, devisees or legatees, an allowance should be made for the necessary expenses of the support of the children of the deceased under the age of seven years. After this settlement the estate remained in the hands of the executrix, to be further administered and disposed of according to law and the will of the testator.

R. S., ch. 46, § 29, provided that the probate court might make such reasonable allowance as might be adjudged necessary for the maintenance of the widow and minor children, or either, constituting the family of the testator, out of his personal estate, or the income of his real estate, during the progress of the settlement of the estate, but never for a longer period than until their shares should be assigned to them.

At the settlement with the probate court, April 17, 1857, the probate court had jurisdiction to settle and allow the administration account of the executrix, as it then did. It had jurisdiction to appoint a guardian to the minors interested in the estate, although they then resided in another district. R. S., ch. 47, § 19. The various statutes cited were all in force at the time of this settlement. So far as appears the items then allowed by the probate court for the support of the minors, Alma and Mary, were proper, and they were clearly within the scope of the statutes governing that subject. These statutes did not require that such allowance for the support of minors should be made in advance of the expenditure. *Sawyer* v. *Sawyer*, 28 Vt. 245. If the probate court adjudged the expenditure to be proper, the right of the executrix to be reimbursed was the same whether she had expended money belonging to herself or the specific funds of the estate. All the parties in interest were then before the court

in person or by their lawful representative, and its judgment, allowing the final account of the executrix after her marriage had terminated her interest in the estate, is conclusive and binding upon all the parties, unless impeached and set aside for fraud or other legal cause.

A party "who alleges fraud must clearly and distinctly prove the fraud he alleges. The *onus probandi* is upon him to prove his case as it is alleged by his bill." Kerr Fr. 382. As the master fails to find fraud on the part of the executrix in the settlement of April 17, 1857, the orators cannot recover under the allegations of their bill charging fraud in that respect.

The executrix properly paid to Nesbit, the guardian of the oratrix, Alma E., the $100 found to be her share under the will, at this settlement, and she was thereby discharged from further liability as executrix to Alma E. for the same.

This $100 was held by Nesbit as such guardian until about 1867, when he paid over the same to Harriet Mears, then Harriet Nesbit, for the oratrix, Alma E., and she received the same and retained it until her decease, knowing that it was the money which the guardian held in trust for the oratrix. She thus made herself trustee *de son tort* of the $100 for the oratrix, Alma E. While she held it as such constructive trustee, she was subject to the same rules and remedies as other trustees. Per. Tr., § 245. No reason is shown why she retained this money instead of paying it over to the oratrix, who had then attained her majority, nor is any fact disclosed by the master's report which is any ground for excusing her from the payment of interest from the time it came into her hands. We think the orators on the facts reported have a valid, equitable claim against the estate of Harriet Pinney for this $100, and simple interest thereon from January 1, 1867.

As the orator's bill is not framed with a view to a recov-

ery on this ground, it will have to be amended for that. purpose.

*The pro forma decree below is reversed pro forma without costs to either party, and the cause is remanded with mandate directing the Court of Chancery to enter a decree for the orators in accordance with the foregoing views, upon the proper amendment of the orators' bill for that purpose. The terms upon which such amendment may be made and the question of costs below are left with the Chancellor.*