FIRST NATIONAL BANK OF ENOSBURG FALLS *v.* E. E. BAMFORTH.

February Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed February 4, 1916.

*Waiver of Tort—Bankruptcy—"Debt" Within Bankruptcy Act —Discharge—"False Pretences"—Wilful and Malicious Injuries to Property of Another—Debts Scheduled—"Fiduciary Capacity"—"Trustee De Son Tort"—"Intentionally" —"Wilful."*

A tort that can be waived and an action *quasi ex contractu* maintained on the claim is a provable debt within the Federal Bankruptcy Act.

The maker of a promissory note who deposited with the payee as security a note executed by a third person, and thereafter collected the proceeds of the pledged note by falsely representing to the maker thereof that he still held it, was guilty of a tort that the pledgee could waive and maintain assumpsit.

The claim of the pledgee of a promissory note against the pledgor for collecting and converting the proceeds of the note while it was pledged as collateral security is not one for obtaining property by false pretences, nor did it arise from wilful and malicious injuries to the property of the pledgee, within §17 of the Federal Bankruptcy Act, providing that a discharge in bankruptcy shall release a bankrupt from all his provable debts except such as are liabilities for obtaining property by false pretences, or for wilful and malicious injuries to the person or property of another.

In §17 of the Federal Bankruptcy Act, providing that a discharge in bankruptcy shall release a bankrupt from all his provable debts, except such as were created by fraud, embezzlement, misappropriation, or defalcation or in any fiduciary capacity, the term "fiduciary capacity" relates back to and qualifies the terms "fraud," "embezzlement," and "defalcation," embraces only technical trusts, and does not apply to an implied trust.

Though one may become a trustee *de son tort* by assuming the administration of a trust estate, a single act of conversion does not make one a trustee *de son tort*, and there can be no trustee *de son tort* of an implied trust, but only of a technical trust.

To bring a debt within §17 of the Federal Bankruptcy Act, providing that a discharge in bankruptcy shall release the bankrupt from all his provable debts except such as were created while acting in any fiduciary capacity, the fiduciary relation must have existed before and independently of the particular transaction that created the debt.

In the finding by the court on a motion for a certified execution that defendant "intentionally converted the funds of the plaintiff, and that the cause of action arose from the wilful and malicious act and neglect of the defendant," the word "intentionally" adds nothing, for the word "wilful" means intentional, and that finding does not show a claim not discharged under §17 of the Federal Bankruptcy Act, where it appears that the finding that defendant converted the funds of plaintiff is but a conclusion of law.

GENERAL ASSUMPSIT. Pleas, the general issue and discharge in bankruptcy. Replication, claim not scheduled, fund in question obtained through fraud, and retained in a fiduciary capacity. Trial by court at the March Term, 1915, Franklin County, *Fish*, J., presiding. Judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Hogan & Hogan* for the defendant.

*S. R. Boright* and *M. H. Alexander* for the plaintiff.

POWERS, J. Bamforth owed the Bank a note, and put up as security therefor a certain negotiable note signed by one Metcalf. The Bank failed to notify Metcalf of the transfer of his note, and he paid it to Bamforth, who falsely represented

that he still held it. Bamforth appropriated the avails of the collateral note to his own use, and was afterwards discharged in bankruptcy. The important question in the case is, Does the Bank's claim against Bamforth on account of such collection and appropriation, assuming the validity of such claim, survive the discharge?

The provisions of the Bankruptcy Act involved here read as follows: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts except such as * * * * (2) are liabilities for obtaining property by false pretences or false representations or for wilful and malicious injuries to the person or property of another, * * * *; (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy; or (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer, or in any fiduciary capacity."

No question is made as to the original validity of the plaintiff's claim, and we therefore assume it. Nor is the provability of the claim questioned; but we recognize the fact that under the rule prevailing with us it would be our duty to sustain the judgment below by a determination of this question, if it could be done. Since the amendment of 1903, some question has been made as to the provability of unliquidated torts, pure and simple. 3 R. C. L. §150. But all seem to agree that when the tort is of that character that it can be waived and an action *quasi ex contractu* maintained, the claim is a debt within the meaning of the bankruptcy act and provable. 3 R. C. L. §72; Note 1 L. R. A. (N. S.) 202; Note 8 L. R. A. (N. S.) 961; Note 9 Ann. Cas. 448; *Crawford* v. *Burke,* 195 U. S. 176, 49 L. ed. 147, 25 Sup. Ct. 9; *Clark* v. *Rogers,* 228 U. S. 534, 57 L. ed. 953, 33 Sup. Ct. 587; *Reinhart* v. *Friederick,* (Ind.) 108 N. E. 258.

That the claim here asserted is of the class named cannot be denied. The plaintiff has in fact waived the tort by suing in assumpsit. He has elected to stand on his contractual rights. Whether this action on the part of the plaintiff affects his tortwise claim is a question not presented. We may say in passing, however, that if the point had been raised, it would be a question for very serious consideration whether or not the plaintiff has not, by proceeding to judgment against Metcalf on the col-

lateral note, thereby made a binding election of remedies, precluding an action against the defendant.

The claim in suit is not one for obtaining property by false pretences. The right of the plaintiff does not arise from the manner in which the defendant obtained the money and property taken by him in payment. It is true that the latter deceived Metcalf and it is probable that Metcalf could have sustained an action for obtaining money by false pretences. But this does not furnish the basis of the Bank's action. It is, so far as the plaintiff is concerned, wholly immaterial how Bamforth came into possession of the avails of the collateral notes.

Nor can it be said that this liability arose from wilful and malicious injuries to the property of the plaintiff. Neither the money nor the property was paid or received as the Bank's. Title thereto never vested in the Bank,—at least not until the Bank took some action toward asserting ownership of it. The Bank was not obliged to affirm the transaction or in any way notice or recognize it. In fact, the Bank did ignore it and sued Metcalf and pursued the suit to final judgment, thereby repudiating the payments made to Bamforth. It was only after that judgment against Metcalf proved worthless that the Bank turned to Bamforth. It was only in an equitable sense that the Bank had any interest in the money and property received by him.

Subdivision (3) will not avail the plaintiff, because it appears that the Bank had full and seasonable knowledge of both the bankruptcy proceedings and Bamforth's collections on the collateral note.

We conclude, then, that this action must stand or fall by the provisions of subdivision (4) of the section quoted. It is to be noted that the term "fiduciary capacity" relates back to and qualifies the terms "fraud," "embezzlement," "misappropriation" and "defalcation." *Crawford* v. *Burke,* 195 U. S. 176, 49 L. ed. 147, 25 Sup. Ct. 9; *Bullis* v. *O'Beirne,* 195 U. S. 606, 49 L. ed. 340, 25 Sup. Ct. 118; *Tindle* v. *Birkett,* 205 U. S. 183, 51 L. ed. 762, 27 Sup. Ct. 493. So the controlling inquiry is as to the true scope and meaning of the term "fiduciary capacity."

It is fully established that this term carries the same meaning that it did in the Acts of 1841 and 1867, and that it embraces technical trusts only, and not implied trusts. *Chapman* v. *Forsyth,* 43 U. S. 202, 11 L. ed. 236; *Hennequin* v. *Clews,* 111

U. S. 676, 28 L. ed. 565, 4 Sup. Ct. 576; *Stickney's Admr.* v. *Parmenter,* 74 Vt. 58, 52 Atl. 73; *Flanders* v. *Mullin,* 80 Vt. 124, 66 Atl. 789, 12 Ann. Cas. 1010.

This doctrine, the accuracy and wisdom of which we are not at liberty to question, denies this plaintiff a recovery. In any view, Bamforth was nothing more than a constructive trustee. There was not and could not be a technical trust thus created. The plaintiff argues that Bamforth was a trustee *de son tort.* It is true that one may become such by assuming the administration of a trust fund or estate. *Huntley* v. *Denny,* 65 Vt. 185, 26 Atl. 486; *Bailey* v. *Bailey,* 67 Vt. 494, 32 Atl. 470, 48 Am. St. Rep. 826. But a single act of conversion or confiscation, or a series of such acts, does not make one a guardian, trustee or executor *de son tort.* Moreover there can be no trustee *de son tort* in implied trusts. The term is only applicable to technical trusts.

There is another well established rule that prevents a recovery here. It is quite apparent that no fiduciary relation existed between Bamforth and the Bank until the former received the payments from Metcalf; and that any such relation that ever existed between them sprang from the very act or acts which gave rise to the claim in suit. The rule established by the cases is that in order to bring a debt within exception 4 of the section quoted, the fiduciary relation must have existed previously to or independently of the particular transaction from which the debt arises. *Cronan* v. *Cutting,* 104 Mass. 245, 6 Am. Rep. 232; *Bryant* v. *Kinyon,* 127 Mich. 152, 86 N. W. 531, 53 L. R. A. 801; *Henniquin* v. *Clews,* 77 N. Y. 427, 33 Am. Rep. 641; *Goodman* v. *Herman,* (Mo.) 72 S. W. 546, 60 L. R. A. 885; *Bracken* v. *Milner,* 104 Fed. 522; *Am. Agri. Chemical Co.* v. *Berry,* (Me.) 87 Atl. 218, 45 L. R. A. (N. S.) 1106, Ann. Cas. 1915 A, 1293; *Hammond & Burt* v. *Noble,* 57 Vt. 193; *Upsher* v. *Briscoe.* 138 U. S. 365, 34 L. ed. 931, 11 Sup. Ct. 313.

The plaintiff places much reliance on *Johnson* v. *Worden,* 47 Vt. 457, *Darling* v. *Woodward,* 54 Vt. 101, and *Hammond & Burt* v. *Noble,* 57 Vt. 193. But to do so is to lose sight of the fact that the last named case, which was based upon the Johnson and Darling cases, was reversed by the Federal Supreme Court, *Noble* v. *Hammond & Burt,* 129 U. S. 65, 32 L. ed. 621, 9 Sup. Ct. 235, though the reversal was not on account of this Court's interpretation of the phrase "fiduciary capacity,"—which was

in harmony with that of the Federal Supreme Court. *Slayton*
v. *Wells,* 66 Vt. at p. 65, 28 Atl. 632.

The plaintiff calls attention to the fact that under the
motion for a certified execution, the court found that the de-
fendant ''intentionally converted the funds of the plaintiff, and
that the cause of action arose from the wilful and malicious act
and neglect of the defendant,'' and claims that the use of the
word ''intentionally'' adds something to this finding. But the
word ''wilful'' means *intentional. McChristal* v. *Clisbee,* 190
Mass. 120, 76 N. E. 511, 3 L. R. A. (N. S.) 702, 5 Ann. Cas. 769;
*Buchanan* v. *Cook,* 70 Vt. 168, 40 Atl. 102; *Flanders* v. *Mullin,*
80 Vt. 124, 66 Atl. 789, 12 Ann. Cas. 1010; *Tinker* v. *Colwell,*
193 U. S. 473, 48 L. ed. 754, 24 Sup. Ct. 505. Therefore this
word adds nothing to the finding. The further statement that
the defendant converted the funds of the plaintiff, is obviously a
conclusion of law. For, as we have seen, the funds were not
the property of the plaintiff when converted.

The simple fact is that the Bankruptcy Act as construed by
the Federal Supreme Court, does not make the claim here sued
on a fiduciary debt. There is nothing for us to do but follow the
law thus laid down.

*Judgment reversed and judgment for the defendant to re-
cover his costs.*