Matteson et al. *v.* Kellogg et al.

PELEG MATTESON et al., Plaintiffs in Error, *v.* AARON KELLOGG et al., Defendants in Error.

ERROR TO WARREN.

Where one receives the money or property of another as agent or bailee, the title to which is to remain in the principal, and which is to be paid over or delivered to him, or to be used in a particular way, or for a specific purpose for his use ; that then the money or property is held or received in a fiduciary capacity or as trustee.

ON the 19th day of May, 1836, George H. Wright, of Warren county, Illinois, received of Sylvester Blish, of Henry county, for Aaron Kellogg and his friends, in Vernon, Connecticut, the sum of $400, for the purpose of procuring a quarter section of land in Warren county.

On the 22d day of March, 1842, Wright filed in the district court for the district of Illinois, at Springfield, his petition under

the late bankrupt law for the purpose of procuring a discharge from his debts; and on the 6th day of December, 1842, he was duly discharged from his debts, and received his certificate in due form of law. Some time afterwards Wright died intestate, and Peleg Matteson and W. W. Porter were appointed administrators of his estate, and entered upon the discharge of their duties as such. Aaron Kellogg and Hubbard came into the county court sitting as a court of probate, and filed their claim against the estate of George H. Wright, deceased, and asked that the same be allowed to them, and paid by the plaintiffs in error, in due course of administration. The case in the county court was heard upon the deposition of Sylvester Blish; and the claim and interest allowed, amounting to the sum of eight hundred and twelve dollars and fifty cents, from which allowance the administrators prosecuted their appeal to the circuit court of Warren county.

The cause was there heard, at April term, 1854, before H. M. Wead, Judge, a jury being waived, and a judgment rendered against the plaintiffs in error, for the sum of about $828.

To reverse which judgment, the plaintiffs have prosecuted their writ of error in this court.

Davidson & Blackwell, for plaintiffs in error.

J. Manning, for defendants in error.

Caton, J. The liability for which this action was brought, was evidenced by the following writing:—

"Received of Sylvester Blish, four hundred dollars for the purpose of procuring a quarter section of timber land for Aaron Kellogg and his friends, in Vernon, Connecticut State.

H. G. Wright.

Monmouth, 19th May, 1836."

Blish testified that when he gave the money to Wright he explained to him that it belonged to Aaron Kellogg, Hubbard Kellogg, and Ralph Tolcott, for whom the land was to be purchased. He further testified that Tolcott died before the commencement of this action, and that the Kelloggs, the plaintiffs, were still living, and that Wright admitted to him, before his death, that he had not purchased the land. The defence was, a discharge of the intestate under the general bankrupt law. The question is, whether this was a fiduciary debt within the meaning of that act. The debts which form an exception to the operation of the discharge in bankruptcy under that act, are

" those which have been created in consequence of a defalcation of a public officer, or as executor, administrator, guardian, or trustee, or while acting in any other fiduciary capacity." Under this act the supreme court of the United States, in the case of Chapman *v.* Forsyth, 2 Howard, 202, decided that money received by a factor on the sale of the goods of his principal, does not create a fiduciary debt within the meaning of that act. The reason assigned for that decision is, that according to the course and usage of the trade, the factor is permitted to carry such money into account and mingle it with his own money, whereby it ceases to be the money of the principal and becomes the money of the factor, who becomes debtor to the principal to that amount. If there be an implied agreement between the principal and the factor that the latter may take and use the money in his business till called for, by being thus carried into general account, it becomes an ordinary debt, the same as money loaned, subject to call. But such was not the character of this transaction. The money was here placed in Wright's hands for a particular purpose, with·no authority to him to use it in his general business, or appropriate it in any way different from the trust which he assumed when he received the money. It continued to be the principal's money in Wright's hands, as much as it was in Blish's hands, or even in their own; and using it in any way different from his instructions and his agreement was a breach of the trust which he had assumed. He did not become debtor to his principals till he misapplied the funds. Had he bought the land intended to be purchased, or any other lands with this money, and taken the deed to himself, a resulting trust would have arisen in favor of the principals whose money was thus invested. Had the principals consented that he might use the funds in his business, and then, at a convenient season, purchase the land with his own funds for their use, then it would have become an ordinary debt, so soon as he used the money in pursuance of such consent. I understand the rule to be, where one receives the money or property of another as agent or bailee, the title to which is to remain in the principal, and which is to be paid over or delivered to him, or to be used in a particular way or for a specific purpose for his use, that then the money or property is received or held in a fiduciary capacity, or as trustee. In such a case a special trust and confidence is reposed beyond that of mere credit, and it was against the violation of such confidence that congress designed to provide, by the exception quoted. In the case of White *v.* Platt, 5 Denio, 269, it was held, by the supreme court of New York, that money collected by one in whose hands a

note was left for collection, is the money of the principal in the hands of the agent, and if the agent use or fail to pay over the money, he is guilty of a breach of trust, and a fiduciary debt is created within the meaning of the act of congress. The same rule was held by the chancellor in the case of Kingsland *v.* Spaulding, 2 Barb. Ch. R. 341.

We think this was a fiduciary debt, and was not discharged by the decree in bankruptcy. Had the plaintiffs below appeared and proved up their debt before the commission, and received their dividends, they would thereby have waived the benefit of the exception in the statute. But there is no pretence that they did this.

The judgment of the circuit court must be affirmed.

*Judgment affirmed.*