ALBONI, The, (BRITTAN v.)
[See Brittan v. The Alboni, Case No. 1,902.]

---

## Case No. 145.

### In re ALBRECHT.

[17 N. B. R. 287.]

District Court, E. D. Michigan. Dec. 31, 1877.

BANKRUPTCY — DISCHARGE OF GARNISHMENT — RIGHTS OF ATTACHMENT CREDITOR.

[A garnishment in a state court of the defendant's credits in a bank was discharged by his giving a bond required therefor by statute to satisfy the judgment, and the money was drawn by him from the bank, and deposited with a third person as indemnity to the sureties on his bond. Held, that the assignee appointed in proceedings in bankruptcy commenced against him more than a year after the garnishment was not entitled to an injunction against further proceedings in the suit in the state court, nor to the money so deposited, as assets of the estate; as the lien of the attaching creditor, acquired more than four months before the bankruptcy proceedings, was not destroyed by the giving of the bond.]

[Cited in Hill v. Harding, 9 Sup. Ct. Rep. 726, 130 U. S. 699.]

[In bankruptcy. Petition of the assignee in bankruptcy of William Albrecht for an injunction to restrain proceedings in a suit against the bankrupt in a state court. Denied.

[It appeared that the suit in question was brought by one Seeley against Albrecht, in a circuit court of the state of Michigan, and that a writ of garnishment was issued therein against the bank, as a debtor of Albrecht; that Albrecht obtained the discharge of the garnishment by giving a bond to satisfy the judgment, as required by statute, and drew the money due him from the bank, and deposited it with one Rich as indemnity to the sureties on the bond; and thereafter no further proceedings were taken in the suit. The proceedings in bankruptcy were commenced more than a year after the garnishment. The assignee sought to stay the proceedings in the state court, and claimed the fund deposited with Rich as part of the assets of the bankrupt's estate.]

George W. Bates, for assignee, petitioner.
C. E. Warner, for plaintiff in garnishment.

BROWN, District Judge. This case turns upon the construction given to the several provisions of the bankrupt law with respect to the dissolution of attachments, and the effect of a discharge. [Rev. St.] § 5044, enacts, that the assignment of the bankrupt "shall dissolve any attachment made within four months next preceding the commencement of the bankruptcy proceedings." Section 5106 provides that "no creditor whose

debt is provable shall be allowed to prosecute to final judgment any suit at law or in equity therefor, against the bankrupt, until the question of the debtor's discharge shall have been determined; and any such suit or proceedings shall, upon the application of the bankrupt, be stayed to await the determination of the court in bankruptcy on the question of the discharge, provided the suit may proceed to judgment for the purpose of ascertaining the amount due," etc. Section 5119 declares that "a discharge in bankruptcy duly granted, shall release the bankrupt from all debts, claims, liabilities, and demands which were, or might have been, proved against his estate in bankruptcy." A distinction is taken, in the section first above quoted, between attachments issued more, and those issued less than four months before the commencement of proceedings in bankruptcy. While nothing is said, in express terms, with regard to the former, the clear inference is, that the liens acquired by them were designed to be preserved. Such is the uniform course of decision, and, indeed, it was conceded that if the bond had not been given, and the garnishment proceedings thereby discontinued, Comp. Laws, § 6512, the plaintiff would have been at liberty to prosecute his suit, at least so far as to protect his lien upon the money in the hands of the garnishee, and this petition could not have been sustained. Peck v. Jenness, 7 How. [48 U. S.] 612; Davenport v. Tilton, 10 Metc. [Mass.] 320; Bates v. Tappan, 3 N. B. R. 647, 99 Mass. 376; Bosworth v. Pomeroy, 112 Mass. 293; Bowman v. Harding, 4 N. B. R. 20, 56 Me. 559; Stoddard v. Locke, 9 N. B. R. 71, 43 Vt. 574; Daggett v. Cook, 37 Conn. 341; Valliant v. Childress, 11 N. B. R. 317, 21 Wall. [88 U. S.] 643. It is insisted, however, that as soon as the bond was filed, and the suit in garnishment discontinued, the action became a purely personal one, and subject to be barred by a discharge, as if no garnishment had ever issued. The question does not seem to have been passed upon in the federal courts. The state authorities are in direct conflict. In the case of Carpenter v. Turrell, 100 Mass. 450, where the attachment was dissolved by a bond, the court held a discharge in bankruptcy a good plea to the further prosecution of the suit; the argument being, that the bond was not intended as a substitute for the attachment. "It does not merely restore the possession of the property to the debtor, subject to the attachment; it dissolves the attachment utterly. It is not given for the property itself, nor as security for its value; but for the payment absolutely of the judgment, when recovered in the suit, whatever may be its amount." A somewhat similar question had arisen under the insolvent law of the state, in Loring v. Eager, 3 Cush. 188. In that case it appeared, however, that the attachment would have been dissolved if no bond had been given, and the court observed,

taking in this regard apparently a different view from that entertained in the latter case, "the bond was a security substituted for the security obtained by the attachment of the defendants' property; and we cannot suppose that the legislature intended that the plaintiffs should have any greater rights under the bond, in a case like this, than they would have had under the attachment."

The case of Payne v. Able, 4 N. B. R. 220, 7 Bush. 344, though an apparent authority in favor of the petitioner, is really of no pertinence, as the attachment was levied less than four months before the petition was filed. The case of Williams v. Atkinson, 36 Tex. 16, also relied upon by the petitioner here, does not seem to me to have any bearing upon the case. The discharge in bankruptcy was held to be a good plea, notwithstanding the attachment proceedings were commenced more than four months before the bankruptcy, upon the ground that the remedy of the plaintiffs in attachment was in the United States court. In so far as this case is an authority at all, it seems to be in conflict with the other cases above cited upon the same subject. The case of Carpenter v. Turrell is criticised by the New York courts, in Holyoke v. Adams, 10 N. B. R. 270, in which, under similar circumstances, it was held that the discharge in bankruptcy would not prevent judgment being recovered, and the sureties upon the bond being bound therefor. Motion was made in this case for a stay of proceedings, and the court held that the execution and delivery of the undertaking in attachment, was in legal contemplation a continuation of the attachment proceedings. "The propriety of this is apparent from the obligation assumed by the sureties, which is to pay any judgment that may be recovered in the action, the sureties thus agreeing to do exactly what the property seized would do when applied, viz. pay the judgment obtained, and also from the presumption that the property levied upon would have remained in statu quo until the judgment was recovered, if the undertaking had not been given." The case was carried through the special and general terms of the supreme court, and finally to the court of appeals, the opinion of which is published in 59 N. Y. 233. It is but just to say, however, that the question was not directly passed upon by the court of appeals. The supreme court of New Hampshire, in Zollar v. Janvrin, 49 N. H. 114, indicated a very decided opinion in the same direction, although the case went off upon another point. The court observes: "It would seem to be beyond doubt, that if it be the policy of the law to protect such securities, its protection should also be extended to the case where, for the benefit of the debtors, the lien of an attachment is only dissolved by the substitution of another security." In my opinion these cases enunciate the sounder principle. It

was the obvious intent of the legislature to preserve the lien of attachments acquired more than four months before the commencement of bankruptcy proceedings, as well as to annul writs thereafter issued; and we are bound to give effect to this intention, even if, in so doing, we depart from the letter of other general provisions of the statute in sections 5106 and 5119 relative to discharges.

In Peck v. Jenness, 7 How. [48 U. S.] 623, it is said: "But it is among the elementary principles with regard to the construction of statutes, that every section, provision, and clause of a statute shall be expounded by a reference to every other, and if possible, every clause and provision shall avail and have the effect contemplated by the legislature. One portion of a statute should not be construed to annul and destroy what has been clearly granted by another. The most general and absolute terms of one section may be qualified and limited by conditions and exceptions contained in another, so that all may stand together." This language was used by the court in an endeavor to harmonize two apparently conflicting provisions of the bankrupt act of 1841, similar to these; one of which declared that a discharge should be deemed a full and complete discharge of all debts provable under the act; and the other of which provided that nothing in the act contained should be construed to annul, destroy, or impair any liens. The language seems to me pertinent to the case under consideration. See, also, Chesapeake & O. Canal Co. v. Baltimore & O. R. Co., 4 Gill. & J. 1152; Brown v. Somerville, 8 Md. 444; Jackson v. Collins, 3 Cow. 89. I deem it inconsistent with the general purpose of the act to hold that the lien of a creditor, lawfully acquired by his diligence, shall be lost by the debtor giving a bond to satisfy the judgment, an action entirely beyond the control of the creditor, and one which was designed to secure, not to defeat, the ultimate payment of his debt. The bankrupt law has wisely interposed to protect the property of an insolvent debtor from being swallowed up by attachments issued upon the eve of bankruptcy, but has not interfered with liens acquired in the ordinary course of business, and before insolvency is threatened. But under the construction given by the Massachusetts courts, the preference of the attaching creditor is lost, if the debtor is sufficiently responsible to obtain a bond, while it is preserved, if his situation is so desperate as to make the release of the property impossible. Subsequent cases in the same court indicate the serious consequences likely to follow the practical enforcement of this doctrine. In Hamilton v. Bryant, 14 N. B. R. 479, 114 Mass. 543, the bond in attachment was not given until the adjudication in bankruptcy, and two years after the commencement of suit; and yet the court held

the plaintiff was not entitled to a special judgment against the defendant and sureties. Braley v. Boomer, 12 N. B. R. 303, 116 Mass. 527; Johnson v. Collins, 12 N. B. R. 70, 117 Mass. 343. From this, then, it results that any attachment lien existing on the property of the bankrupt at the time of filing the petition, may be defeated by any person interested adversely to such lien (as, for instance, another creditor or the assignee) giving a bond in the name of the defendant, with sureties, to pay the judgment; in other words, securing the debt by a bond which can never be made available itself, and which destroys the security the plaintiff already had. A more complete subversion of the legislative intent can scarcely be imagined. I think the language used in section 5044 should be construed to qualify the general provisions of the later sections with regard to discharges. It may be the assignee is entitled to a temporary stay of proceedings until the question of a discharge is determined, to enable him to appear, plead the discharge, and raise the question in the state court; but as the petition was not framed upon that basis, and the suggestion was not made upon the argument, it is unnecessary to pass upon this question. The petition must be denied without prejudice.