BRYANT *v.* KINYON.

1. BANKRUPTCY—PROVABLE DEBTS — DISCHARGE — FRAUD — FIDUCIARY CAPACITY.

> Where plaintiff sold wood to defendant under a contract retaining title until payment of the purchase price, and defendant sold the wood and appropriated the proceeds, his liability therefor was a debt provable against his estate in bankruptcy, under section 63 of the bankrupt act of 1898, as a debt founded on contract, express or implied, and was not one "created by his fraud, embezzlement, or misappropriation while acting in a fiduciary capacity," within section 17, so as to prevent a discharge in bankruptcy from effecting his release from the liability.

2. SAME—CAPIAS—RELEASE OF SURETIES.

> Where defendant in a suit commenced by *capias* was released from the liability sought to be enforced by a discharge in bankruptcy subsequent to the commencement of suit, the sureties on his bail bond were likewise released, since their

liability was contingent on a judgment's being rendered against the principal.

3. SAME—PLEADING.

In pleading a discharge in bankruptcy, it is unnecessary to set up all of the facts essential to the jurisdiction of the bankruptcy court.

Error to Hillsdale; Chester, J. Submitted March 5, 1901. Decided June 17, 1901.

Trover by Ira N. Bryant against Daniel B. Kinyon. From a judgment for plaintiff, defendant brings error. Reversed.

*F. A. Lyon*, for appellant.

*Grant Fellows* and *B. D. Chandler*, for appellee.

HOOKER, J. The parties made a written contract, whereby the plaintiff agreed to sell and deliver to the defendant 2,400 cords of wood at $1.50 per cord, to be paid as follows: "As fast as one hundred cords of said wood shall be sold [*i. e.*, by Kinyon], he shall pay to Bryant one hundred and fifty dollars in cash therefor." It further provided that the title to the wood should remain in Bryant, with all rights of possession, until the same should be fully paid for, which should be within three years; and that, "as earnest money," Kinyon should convey to Bryant a house and lot designated, and upon receipt of the deed Bryant should indorse upon the contract $500. Two thousand one hundred and eleven cords of wood were delivered before April 15, 1896. In June, 1896, the plaintiff brought *assumpsit* against the defendant for the price of the wood sold by the defendant up to that time, and recovered a judgment for $640 and interest. After the bringing of the action in *assumpsit*, defendant continued to sell the wood, and there is testimony tending to show that he sold 512 cords after that time. On May 17, 1897, this action was begun by *capias*. The declaration contains three counts in trover; the first being

for an alleged conversion of 2,400 cords of wood; the second and third for the conversion of $2,400 in money. The third alleges the money to have been received by the defendant from the sale of the wood delivered under this contract. The defendant pleaded the general issue, and, after the case had been once tried and reversed by this court, added a notice that, after the commencement of this action, he received his final discharge in bankruptcy, and was, together with his' sureties on the *capias* bond, thereby released from any further liability on this claim. The plaintiff recovered a verdict and judgment, and the defendant has brought error.

We consider the last question mentioned conclusive of the case. It is maintained by the defendant that the plaintiff's claim for the conversion of the property constituted a debt provable against the bankrupt, and section 63 of the bankrupt act of 1898 (30 U. S. Stat. chap. 541) sustains this contention. It provides that:

"Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by * * * an instrument in writing; * * * (4) founded upon * * * a contract, express or implied."

That unliquidated claims such as this may be proved against a bankrupt's estate admits of no doubt. Subdivision *b* of section 63 expressly recognizes the right, and there are many cases arising under earlier laws where they have been proven.

It does not necessarily follow that a discharge in bankruptcy releases a bankrupt from all of his provable debts. He is released only from those which the law provides that he shall be released from. Section 17 of the act of 1898 excepts all provable debts "created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity;" and it seems to be agreed by counsel that the defendant is released by his discharge unless this claim is within this exception. Counsel for the plaintiff cite some cases which are said to sustain the claim that this conversion falls

within the exception. Thus, in *Matteson* v. *Kellogg*, 15 Ill. 547, it was held that one receiving money to be used in the purchase of certain land for the owner of the money acted in a fiduciary capacity, and would not be discharged from a claim based on his misappropriation of the money. The case of *Herman* v. *Lynch*, 26 Kan. 435 (40 Am. Rep. 320), was similar. The defendant received money for the purpose of buying exchange, and remitting it to plaintiff's creditors. Instead of doing so, he converted the money, and it was held that he was not released by a discharge in bankruptcy. In *Fulton* v. *Hammond*, (1882) 11 Fed. 291, action was brought against one who had taken a note for collection, and appropriated the proceeds to his own use. Discharge in bankruptcy was held no defense. In each of these cases there was a clear fiduciary relation. The defendant was an agent, and embezzled the funds of his principal. There are, however, two Vermont cases which are in point. In the case of *Johnson* v. *Worden*, 47 Vt. 457, decided in 1874, plaintiff brought trover for a yoke of oxen, which he sold conditionally to the defendant, reserving the title until fully paid for. The latter exchanged the cattle for some stags, and never paid for the oxen. Bankruptcy proceedings followed, and plaintiff proved his claim for a balance due upon the oxen, and the defendant was discharged. The court refused to instruct the jury that the discharge should defeat plaintiff's action, and the judgment was affirmed; the court holding that, by the contract, plaintiff had a claim for the price, and a right to the oxen until the debt should be paid, and that, by proving his debt, he was pursuing one of his remedies, which he could do without losing the other. No authority was cited. In *Darling* v. *Woodward*, (1881) 54 Vt. 101, plaintiff had a lien on sheep, and brought trover for their conversion. A discharge in bankruptcy being pleaded, the court held that the debt was created by fraud, and the plaintiff was allowed to recover.

Upon the other hand, we find the leading case of *Chapman* v. *Forsyth*, reported in 1844 in 2 How. 202. It was

there held that a factor who converted a balance did not owe a "fiduciary debt." It was said:

"The second point is whether a factor, who retains the money of his principal, is a fiduciary debtor within the act. If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies, and, indeed, all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act. The cases enumerated, 'the defalcation of a public officer,' 'excutor,' 'administrator,' 'guardian,' or 'trustee,' are not cases of implied, but special, trusts, and the 'other fiduciary capacity' mentioned must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act."

In *Campbell* v. *Perkins*, (1853) 8 N. Y. 439, it was held that a claim for unliquidated damages founded on a contract of storage was a debt subject to the bankruptcy act, though recovery was sought in an action of tort, and the bankrupt was released by the discharge. In *Cronan* v. *Cotting*, (1870) 104 Mass. 245 (6 Am. Rep. 232), it was held that the delivery of bills of exchange to defendant for collection, for application upon defendant's claim against the plaintiff, and payment of the balance of the proceeds to plaintiff, did not constitute a fiduciary relation, and it was said that to so hold "would require an interpretation so broad that almost all pecuniary obligations, especially those implied by law, would be included;" and the court added, "We are inclined to the opinion that the phrase implies a fiduciary relation existing previously to, or independently of, the particular transaction from which the debt arises." In *Neal* v. *Clark*, (1877) 95 U. S. 704, it was held that the word "fraud," as used in the bankruptcy law of 1867, means positive fraud, or fraud in

fact, involving moral turpitude or intentional wrong, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality.   In *Ames* v. *Moir*, 138 U. S. 306 (11 Sup. Ct. 311), the defendant availed himself of a right under an executory contract to call for wines, when he knew he was insolvent, with intent to get possession of them, and convert them to his own use, without paying for them.   The jury was allowed to find that he was guilty of fraud in fact, involving moral turpitude or intentional wrong, in *the creation* of the debt.   In *Upshur* v. *Briscoe*, 138 U. S. 365 (11 Sup. Ct. 313), this question is discussed, and the doctrine of *Cronan* v. *Cotting* approved; *i. ·e.*, that the phrase implies a fiduciary relation existing previously to, or independently of, the particular transaction out of which the debt arises.   See, also, *Hennequin* v. *Clews*, 111 U. S. 676 (4 Sup. Ct. 576); Coll. Bankr. (3d Ed.) p. 203.

It is contended, however, that, as the defendant was arrested upon a *capias*, and gave bail, the surety is not discharged, and that a judgment is necessary, and should be permitted, to fix his liability.   We think this position is not tenable.   The responsibility of the surety is limited by a strict construction of his bond.   There can be no liability unless a judgment is procured in the action against the principal, and that can never be, for the reason that he is released by his discharge.   *Com.* v. *Huber*, 3 Clark, 334; *Kirby* v. *Garrison*, 1 Zab. 179; *Barber* v. *Rodgers*, 71 Pa. St. 362; Coll. Bankr. (3d Ed.) p. 185.

Counsel for the plaintiff assert that the discharge was not sufficiently pleaded to permit defendant to go to the jury on that question, or to call for an instruction by the court, in that the notice of the discharge did not set up facts necessary to give the bankruptcy court jurisdiction, including an allegation of residence of the bankrupt in the district where said court was situate.   The jurisdiction of courts of bankruptcy need not necessarily appear upon the face of the proceedings.   See Coll. Bankr. (3d Ed.) p. 8, and cases there cited.   In pleading judgments of domestic

courts of record, the jurisdiction of the court need not be affirmatively shown by stating the facts upon which it attached.     See 12 Am. & Eng. Enc. Law, 149*f*, and note.

Under the proofs the court should have directed a verdict for the defendant.

We think it unnecessary to discuss the other questions raised, most, if not all, of which are covered by our former opinion in this case, reported in 123 Mich. 151 ( 81 N. W. 1093 ).

The judgment is reversed, and a new trial ordered.

MONTGOMERY, C. J., MOORE and GRANT, JJ., concurred.   LONG, J., did not sit.