FIELD v. HOWRY.

1. BANKRUPTCY— DISCHARGE—FIDUCIARY RELATIONS—RECEIVERS.
   One who is receiver of an insolvent's estate holds its funds in
   a fiduciary capacity, within the meaning of section 17 of the
   bankruptcy' law of 1898, providing that a discharge shall
   release a bankrupt from all provable debts, except such as
   were created by his fraud, embezzlement, misappropriation,
   or defalcation while acting as an officer or in a fiduciary
   capacity.

2. SAME—MISAPPROPRIATION OF FUNDS.
   A receiver of an insolvent estate, who loaned the funds of the
   estate to a firm of which he was a member, misappropriated
   the funds, within the meaning of said section 17 of the bank-
   ruptcy act, even though he did not intend to convert the
   money to his own use.

3. SAME—DEBT CREATED BY MISAPPROPRIATION.
   A receiver who loans trust funds to a firm of which he is a
   member, and takes notes which are a valid claim against his
   copartners, cannot maintain that his discharge in bankruptcy
   is a release, on the ground that the debt is not one created by
   a misappropriation of trust funds.

4. SAME—MORTGAGE FORECLOSURE—DECREE FOR DEFICIENCY.
   A discharge in bankruptcy is no more a defense to a petition
   for a personal decree for a deficiency after mortgage sale,
   where the mortgage was given to secure the loan of trust
   funds misappropriated by the defendant, than it would be in
   a proceeding brought against him in his fiduciary capacity.

5. SAME—WAIVER BY PRESENTING CLAIM.
   One who presents a claim against a bankrupt's estate for a
   debt created by a misappropriation of trust funds does not
   thereby waive the right to proceed against him in a subse-
   quent suit, since the bankruptcy act denies the efficacy of a
   discharge in case of such a debt.

6. MORTGAGE FORECLOSURE — PERSONAL DECREE — DEFICIENCY—
   PRACTICE.
   Where the original decree on the foreclosure of a mortgage
   determined the amount due, that defendant, among others,
   was primarily personally liable, directed a sale in case of non-
   payment, and that any deficiency be reported, leaving open

the question of defendant's rights under a discharge in bankruptcy, defendant could not resist a petition for a personal decree for a deficiency against him on the ground that his liability therefor was not determined by the original decree.

Appeal from Saginaw; Snow, J. Submitted December 5, 1902. (Docket No. 44.) Decided April 14, 1903.

Petition by Asa W. Field, receiver of the estate of George B. Wiggins, insolvent, against John W. Howry, John H. Howry, and H. Kirk Howry, for a deficiency decree after a foreclosure sale. From a decree against defendant H. Kirk Howry alone, he appeals. Affirmed.

*Humphrey & Grant*, for petitioner.

*Weadock & Purcell*, for appellant.

HOOKER, C. J. In November, 1894, George B. Wiggins, being insolvent, conveyed all of his property to H. Kirk Howry and Stephen L. Wiggins in trust for creditors, with preferences. Subsequently this was decreed to be an assignment for the benefit of all creditors, without preferences, at the suit of a dissatisfied creditor, and Stephen L. Wiggins and H. Kirk Howry were appointed receivers. The property was already in their possession as trustees under the assignment first mentioned. During all of this time a firm known as J. W. Howry & Sons was in existence. It was engaged in the business of lumbering, and was composed of John W. Howry and his sons, John H. Howry and the aforesaid H. Kirk Howry.

The receivers converted Wiggins' property into money, and from time to time put it in bank in the name of one or both of them. It was not allowed to remain there long, and substantially all of the net proceeds was loaned to the firm of J. W. Howry & Sons. Wiggins appears to have had little to do with the matter, but consented to the loan. The firm gave its six promissory notes for the money loaned. The first was for $7,500, dated May 4, 1895, while H. Kirk Howry and Wiggins were acting as trus-

tees. The others were made while they were receivers.
The last note was dated June 1, 1896, and they aggregated
$18,100, drawing 6 per cent. interest. No interest was
ever paid, and renewals were not given. Defendant says
this was because the money was subject to call. No
creditor of Wiggins ever received any portion of his claim,
and the loans were made without any authority of court,
and no report of such loans was made to the court until
after J. W. Howry & Sons became insolvent, which
occurred in July, 1896, when they suspended payment of
their obligations. At this time said firm was indebted to
one Grace H. Howry. On July 13, 1896, John W. Howry
gave two mortgages upon property belonging to him to
the receivers.

The court which had appointed the receivers required
them to file an account, and a hearing and examination of
them was had, which resulted in the resignation of Wig-
gins and the removal of H. Kirk Howry, and the appoint-
ment of Asa W. Field as their successor, and the notes
and mortgages were turned over to him. The mortgages
were foreclosed, and a decree was made adjudging that
there was due to the complainant upon the notes and
mortgages the sum of $22,170.41, and that John W.,
John H., and H. Kirk Howry were *primarily* liable for
the payment thereof. The decree provided for a sale of
the premises, and reserved, in express language, the right
of the three Howrys, and each of them, to make the de-
fense of discharge in bankruptcy in any proceedings that
might thereafter be taken to enforce any deficiency that
should be reported. The property was sold, and a de-
ficiency of $14,082.20 resulted.

In January, 1900, a petition was filed by the new re-
ceiver, asking a decree against the three Howrys for this
deficiency. The case was begun before this court upon a
preliminary question, and is reported as *Field* v. *Saginaw
Circuit Judge*, 124 Mich. 68 (82 N. W. 798). A hearing
has been since had in the circuit court, where it was shown
that all of the Howrys had been through bankruptcy, and

that their discharge had been ordered. It was decreed that the defendants John W. and John H. Howry were thereby discharged from this obligation, but that the liability of H. Kirk Howry arose from a misappropriation of a trust fund, and that the discharge in bankruptcy did not discharge him from such liability; and a decree was accordingly entered against him, from which he has appealed.

The liability adjudged in the foreclosure case arises upon contract, viz., the notes. The defendant H. Kirk Howry was a joint maker of these, and, while he did not join in giving the mortgages, they were given to secure the debt, and it was proper that he be made a defendant, and adjudged primarily liable to pay the decree. He thereby became subject to further proceedings to collect the deficiency, which should be decreed against him, unless he can show a reason to the contrary. This he attempts by showing his discharge in bankruptcy, and that is sufficient if his only liability is that of maker of the notes in question. The evidence clearly shows, however, that he diverted his trust fund from a proper use, and himself became the borrower of it conjointly with his copartners, without authority to do so from the court, whose officer he was, and in whose custody the fund was, in contemplation of law. He has had a full hearing upon the merits of this question, and that is the conclusion reached by the learned circuit judge upon the questions of fact, and in that conclusion we concur.

This leaves only some legal questions upon which the case must turn:

1. Was this such a misappropriation as to deprive him of the benefit of his discharge?

2. If so, was any right lost to the petitioner through the presentation of the claim by the receiver against the estates in bankruptcy of John W., John H., and H. Kirk Howry?

3. Is the fact that this proceeding rests upon a foreclosure suit, instead of being an action brought directly to recover for the misapplication of the fund, an obstacle to a decree for the deficiency?

Section 17 of the bankruptcy law of 1898 (U. S. Comp.

Stat. 1901, p. 3428) provides that a discharge in bankruptcy shall release a bankrupt from all his "provable debts," except such as "* * * were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity." We have no difficulty in reaching the conclusion that H. Kirk Howry, the appellant, received and held the funds in a fiduciary capacity, whether he received and held them as trustee under the assignment, or receiver appointed by the court. We think this is settled by the federal cases reviewed in our own case of *Bryant* v. *Kinyon*, 127 Mich. 152 (86 N. W. 531), where this statute was under consideration.

His counsel contend that the loaning of the fund to Howry & Sons was not a misappropriation, within the meaning of that statute; and they invoke the rule of *ejusdem generis* in support of the claim that, to be within the exception of the statute, the misappropriation must be an intentional and wrongful, if not criminal, misappropriation. It is forcibly urged that embezzlement and defalcation involve moral turpitude, as also does fraud, and that this fact explains and limits the sense in which the term "misappropriation" was used. We find it unnecessary to decide this question, further than to say that, in our opinion, such exception should not be restricted to criminal conduct. The use of the word "fraud" forbids that. Although the defendant testified that he had no intent to wrong the estate, and expected that the firm of which he was a member would pay its obligation, and he was anxious to increase the fund in his charge, the testimony shows that he intentionally applied the fund to an unauthorized purpose of his own, and concealed such use from the court as long as possible. We are justified in finding that he knowingly and wrongfully misappropriated the fund, though he may have expected that it would not be lost, and this brings the case within the exception in the statute. It is not necessary that he should have intended to convert the money to his own use, and deprive

the *cestuis que trustent* of the same *altogether.* We accept with much doubt the testimony that the firm was worth more than a million of dollars when this loan was made, and incline to the opinion that it was in straits for money, and that, like many other misguided men, this defendant yielded to the urgency of his necessities, and used this trust fund in the hope, and perhaps expectation, that it would be replaced, but with the knowledge, nevertheless, that it was a wrongful and unauthorized use. This act was not so colored by an agreement to pay interest and the subsequent giving of security (that has since proven inadequate) as to take away its apparent culpability. So such a conversion is wrongful. See *People* v. *Butts*, 128 Mich. 208 (87 N. W. 224); *Tindall* v. *Westcott*, 113 Ga. 1114 (39 S. E. 450, 55 L. R. A. 225); Smith, Rec. § 6c.

Counsel raise the point that this is not a debt created by misappropriation, but is a loan evidenced by a contract between the receiver, who accepted, and Howry & Sons, who gave, notes. When H. Kirk Howry wrongfully parted with this fund, he became indebted to the *cestuis que trustent,* and he is none the less so because he and his copartners expressly recognized an indebtedness. It was a debt created by his misappropriation, notwithstanding the existence of a valid claim against his copartners in the same connection. He cannot avoid the consequences of this exception by taking a note for the amount misappropriated, or by giving and receiving his own note; and his successor is not called upon to split hairs, or lose a security for the fund by electing to treat the firm note and mortgage as void. He received this claim and the paper from this defendant officially, and may make the most he can from them.

The case of *Township of Madison* v. *Dunkle*, 114 Ind. 262 (16 N. E. 593), is in point. There a township trustee wrongfully appropriated funds to his own use while in office, and gave to his successor his note for the amount due the township. An action was afterwards brought by

the township against the defaulting trustee, who set up the claim that the giving and accepting the note relieved the debt of its fiduciary character, and that it was therefore barred by the discharge in bankruptcy. The court said:

"This position cannot be maintained. The execution of the note did not change the character of the debt. The note is not the debt; it is a mere evidence of the debt. * * * The appellee was indebted to the township because he had, in direct violation of law, converted money intrusted to him as a public officer. He did not owe the township simply because he had executed a promissory note to its trustee, but because he had violated the law, and converted the money belonging to the township. It is well settled that the courts will look behind a note, a mortgage, or even a judgment, to ascertain the nature of the debt, and, if it is ascertained to be one which a discharge does not bar, it will be so adjudged." ·

See, also, *Howland* v. *Carson*, 28 Ohio St. 625; *In re Rhutassel*, 96 Fed. 597.

It is contended that this is not a proceeding in which the complainant can proceed against him, because it is not brought against him in his fiduciary capacity. The law (section 17) is not restricted in its operation. It only says, in effect, that, when one is sued on a debt that was created by his misappropriation of a trust fund, he cannot be permitted to effectively interpose his discharge in bankruptcy. He is sued on such a debt, not as a trustee, but personally, and his liability is personal. He does not interpose his discharge in the capacity of trustee, but as a personal protection. The only question here is whether it is a shield, and can protect him against his personal obligation. The law says it cannot, and we think it makes no difference whether it is interposed in an action of *assumpsit* on the liability incurred by the act—*i. e.*, the obligation implied, or an express promise based upon it— or in an effort to collect a deficiency growing out of the proven inadequacy of security given to and accepted by him to secure such obligation. The discharge is elimi-

nated from the case when it appears that the debt was created by the misappropriation of money.

A further point is made in this connection. The petitioner proved his claim against the estate of the bankrupts in the bankruptcy proceedings, and it is said that by so doing he has elected to treat it as an ordinary debt, rather than a fiduciary obligation, and waived the right to question the discharge. We are cited to Bump, Bankr. (11th Ed.) p. 691, and *Chapman* v. *Forsyth*, 2 How. 208, in support of this contention, though it is admitted that the claim is disputed in Love. Bankr. § 293. We do not discover that the citation from Bump throws light upon the question. While the case in Howard held that, under an early act, the court had no jurisdiction over such claims, it also held that, if the creditor saw fit, he might waive his privilege by allowing it to be treated as a claim within the jurisdiction of the court, and that by so doing, and receiving a dividend thereon, he was precluded from afterwards questioning the discharge. But section 17 of the act of 1898 denies the efficacy of a discharge in certain classes of *provable* claims; and the law of 1867, § 5117 (see Bump, Bankr. 691), allowed such a claim to be proved, and applied the dividend on the account, without the attending consequence of waiver mentioned in *Chapman* v. *Forsyth.*

It is said that a personal decree was not rendered against H. Kirk Howry. We have already sustained these proceedings so far as they had then gone in the case of *Field* v. *Saginaw Circuit Judge*, 124 Mich. 69 (82 N. W. 798). We held in that case that an original decree in a foreclosure case might find a personal liability. The original decree found the amount due upon the notes and mortgages, and adjudged that this defendant and his copartners *were* primarily personally liable for the payment thereof, and that, unless they pay it, the premises should be sold, and that the deficiency should be reported. It is now said that this did not determine that defendants were liable for the deficiency. This is true, and the decree shows that the

words used were designed to leave open the question of defendants' rights under their several discharges in bankruptcy. We said in the case cited that it is competent, in a proper case, to determine the question of personal liability for a deficiency, and that such a decree would be final, but that the amount of the deficiency would have to be determined, and that, as the case then appeared, such was the object of the petition. By the express provisions of the decree, the bankruptcy question was reserved, with a view to its presentation on the application. We see no objection to this practice that the defendant can complain of.

The decree is affirmed, with costs.

The other Justices concurred.