BROWN & BROWN COAL CO. v. ANTEZAK.

JUSTICE'S COURT—BANKRUPTCY—DISCHARGE OF APPEAL BOND.

A discharge in bankruptcy of the principal, who has executed an appeal bond in attachment proceedings commenced in justice's court, and who files a petition in bankruptcy, after taking his appeal from the judgment of the inferior court, does not discharge the surety on the bond, where the bond provides that the obligation shall be void if the appellant shall prosecute his appeal with all due diligence, etc., and pay the judgment and costs which may be rendered against him, etc.

Error to Wayne; Murphy, J. Submitted October 19, 1910. (Docket No. 85.) Decided December 7, 1910. Rehearing denied March 20, 1911.

Assumpsit in justice's court by the Brown & Brown Coal Company, a corporation, against Stanislaus Antezak. From a judgment for plaintiff, defendant appealed to the circuit court, where plaintiff asked for judgment against the surety upon defendant's appeal bond; defendant's liability having been discharged by an adjudication of bankruptcy. A judgment for defendant surety is reviewed by plaintiff on writ of error. Reversed.

*E. T. Berger*, for appellant.

*Frank W. Atkinson*, for appellee.

This action was commenced by attachment in the justice's court of Detroit, December 30, 1907. On January 2, 1908, the attached property was released upon the giving of the statutory bond. On February 18, 1908, judgment was rendered in favor of the plaintiff for $405.94 and costs. On March 2, 1908, an appeal was taken to the circuit court for the county of Wayne. In perfecting the appeal the usual statutory bond was given; one John

Knuth becoming surety thereon.    While said appeal was pending, and 13 months after it was taken, the defendant, on April 7, 1909, filed a voluntary petition in bankruptcy in the United States district court.    On July 16, 1909, the appeal not having been prosecuted or determined, plaintiff made a motion to dismiss.    On July 26, 1909, defendant secured an order staying proceedings in the Wayne circuit court until the final determination of the bankruptcy proceedings in the United States district court.    In the bankruptcy proceeding the judgment here in question. was listed as a liability of the bankrupt, and a final discharge was by him obtained on September 21, 1909.    On October 4, 1909, defendant filed an amended plea, giving notice of his discharge, and on December 10, 1909, the case came on for trial in the Wayne circuit court.    No defense upon the merits was interposed by defendant, but it was urged in his behalf that his discharge in the bankruptcy proceeding operated, not only to cancel his indebtedness to plaintiff, but likewise released the surety upon the appeal bond.    It was conceded upon the trial that, unless the discharge of defendant released the surety, plaintiff was entitled to a judgment for the amount of the judgment in the justice's court, with interest.    There being no question of fact involved, by consent of counsel, the case was tried by the court without a jury.    A verdict was directed for defendant, upon which judgment was entered.    Plaintiff has removed the case to this court by writ of error.

Brooke, J. (*after stating the facts*).    From the foregoing statement of facts, it will be seen that the only question to be determined is whether or not the discharge which defendant obtained in the bankruptcy proceedings operates as a bar to the taking of a judgment against his surety upon the appeal bond.    The obligation of the bond is as follows:

"Whereas, judgment was rendered on the 26th day of February, A. D. 1908, by Louis Ott, one of the justices

of the peace in and for the county of Wayne, in favor of the above-named Brown & Brown Coal Company, as plaintiff, and against the above-bounden Stanislaus Antezak, as defendant, for the sum of 405.94 dollars, damages, and 3.00 dollars, costs of suit, and whereas the above-bounden Stanislaus Antezak, conceiving himself aggrieved by said judgment, has appealed therefrom to the circuit court for the county of Wayne: Now, therefore, the condition of the above obligation is such, that if the above-bounden Stanislaus Antezak shall prosecute his said appeal with all due diligence to a decision in the said circuit court, and if a judgment be rendered against him in the said circuit court, shall pay the amount of such judgment, including all the costs, with interest thereon, and in case the said appeal shall be discontinued or dismissed, if the said Stanislaus Antezak shall pay the amount of said judgment rendered against him in said justice court, including all costs with interest thereon, then this obligation to be void, otherwise in force.

[Signed]        "STANISLAUS ANTEZAK.        [Seal.]
[Signed]        "JOHN KNUTH."        [Seal.]

Section 16, National Bankruptcy Law 1898, provides:

"The liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt, shall not be altered by the discharge of such bankrupt." Act July 1, 1898, chap. 541, 30 U. S. Stat. 550 (U. S. Comp. Stat. 1901, p. 3428).

This identical question was considered in the case of *Knapp* v. *Anderson*, 15 N. B. R. 316. The language of the bankrupt act of 1867 is, in effect, the same as that of the act of 1898 above quoted. Act March 2, 1867, chap. 176, § 33, 14 U. S. Stat. 533. The court, after discussing the obligation of an indorser, said:

"So with the surety. He agrees to pay if the event happens which matures his obligation to pay. He assumes to pay, and incurs the obligation to do so, which may become absolute. The design of an undertaking and the effect of it are proper matters of consideration on the question. The undertaking stays all proceedings, and the effect is to prevent the creditor from enforcing his judgment by execution, and in that mode obtaining his debt out of the property of his debtor. The sureties in the

undertaking prevent him from availing himself of this right and opportunity, to which he is entitled by the law of the land and by his superior diligence. This right can be destroyed in all cases if the debtor, by appeal, and by subsequent proceedings in bankruptcy before a judgment of affirmance, can release himself and his sureties as well. It was doubtless to prevent such and kindred results that the law declared the discharge should not release or affect any person liable for the same debt for or with the bankrupt, either as partner, contractor, indorser, surety, or otherwise. It was a personal relief given to the applicant, or forced upon him, and not to those equally bound with him to answer his creditor.  * * *  A surety is rarely primarily liable. His obligation usually depends upon a contingency, which is either an event to occur, or the failure of the principal to pay or to do the act required."

In *Holyoke* v. *Adams*, 10 N. B. R. 270, it was held that a discharge in bankruptcy did not release the sureties upon a bond given in attachment proceedings, commenced more than four months before the bankruptcy proceedings were launched.

The case of *In re Albrecht*, 17 N. B. R. 287, Fed. Cas. No. 145, arose in Michigan, and the opinion was written by Judge Brown, later Justice of the United States Supreme Court. In that case, the authorities are reviewed, and the conflict between them is noted. The court concludes:

"I deem it inconsistent with the general purpose of the act to hold that the lien of a creditor, lawfully acquired by his diligence, shall be lost by the debtor giving a bond to satisfy the judgment, an action entirely beyond the control of the creditor, and one which was designed to secure, not to defeat, the ultimate payment of the debt. * * * But under the construction given by the Massachusetts courts, the preference of the attaching creditor is lost, if the debtor is sufficiently responsible to obtain a bond, while it is preserved, if his situation is so desperate as to make the release of the property impossible."

In *Hill* v. *Harding*, 107 U. S. 631 (2 Sup. Ct. 404), Mr. Justice Gray, speaking for the court, said:

164 MICH.—8.

" The stay does not operate as a bar to the action, but only as a suspension of proceedings until the question of the bankrupt's discharge shall have been determined in the United States court sitting in bankruptcy. After the determination of that question in that court, the court in which the suit is pending may proceed to such judgment as the circumstances of the case may require. If the discharge is refused, the plaintiff, upon establishing his claim, may obtain a general judgment. If the discharge is granted, the court in which the suit is pending may then determine whether the plaintiff is entitled to a special judgment for the purpose of enforcing an attachment made more than four months before the commencement of the proceedings in bankruptcy, or for the purpose of charging sureties upon a bond given to dissolve such an attachment."

This case was again before the United States Supreme Court (130 U. S. 699 [9 Sup. Ct. 725]), where it said:

" If the bond was executed before the commencement of proceedings in bankruptcy, the discharge of the bankrupt protects him from liability to the obligees, so that, in an action on the bond against him and his sureties, any judgment recovered by the plaintiffs must be accompanied with a perpetual stay of execution against him; but his discharge does not prevent that judgment from being rendered generally against them "—citing *Wolf* v. *Stix*, 99 U. S. 1.

A very well considered case involving the question in dispute will be found in *Fisse* v. *Einstein*, 5 Mo. App. 78. After discussing the Massachusetts decisions and those of some other States to the contrary, the court says:

" To hold that the surety in this appeal is to be released because there can be no formal entry of judgment against his principal in the appellate court, though there is a solemn admission in that court of the perfect correctness and justice of the judgment from which this appeal is taken, is to denaturalize the transaction, and to give an interpretation to the appeal bond quite foreign to its scope and meaning. It is to say that the surety, whilst engaging to pay the judgment appealed from if the judgment debtor becomes insolvent, is to be released merely because the judgment debtor becomes insolvent. * * * The in-

solvency of the principal is the very contingency against which the appeal bond was intended to provide."

See, also, *Farrell* v. *Finch,* 40 Ohio St. 337; 5 Cyc. p. 401, and cases cited.

We do not overlook the fact that several States, notably Massachusetts (see *Carpenter* v. *Turrell,* 100 Mass. 452, and *Hamilton* v. *Bryant,* 114 Mass. 543), have given a different construction to the statute. This is, however, a Federal statute, and we are of opinion that the construction it has received in the Federal courts should control, if that construction is not inconsistent with our own decisions and is, as we believe it to be, in accordance with the principles of justice.

It is urged that no Federal question is involved. While in one sense that may be true, yet, under the record as it stands, the only obstacle to the recovery of a judgment by the plaintiff against both principal and surety is the fact that a Federal law says that under a certain contingency (which has arisen) the principal is relieved from the debt. That same law, in terms, and as construed by the Federal courts, says that the release of the principal shall not operate to discharge his surety. Nor is this construction one which is unduly harsh as to the surety. In signing the obligation, he may be presumed to have had in mind the contingency that his principal might become bankrupt, thus making the surety's liability upon the bond certain.

We have not heretofore discussed the conditions of the bond itself. The first condition is:

"That if the above-bounden Stanislaus Antezak shall prosecute his said appeal with all due diligence to a decision in the said circuit court," etc.

Now, did the principal comply with this condition of his bond? Instead of prosecuting his appeal, he voluntarily sought relief through bankruptcy in the Federal court, and interposed that proceeding first for the purpose of securing a stay of proceedings, and finally as an absolute bar to a recovery. These acts are clearly inconsistent

with his obligation as expressed in the bond. Whether or not they constitute such a breach thereof as would render the surety liable we do not decide, for, in our view of the decisions, the liability of the surety would remain the same even though the bankruptcy were involuntary.

Our attention is called to the case of *Bryant* v. *Kinyon*, 127 Mich. 152 (86 N. W. 531, 53 L. R. A. 801). We there held that a discharge in bankruptcy released the surety upon a capias bond. The condition of that bond is that the principal "shall pay the costs and condemnation of the court or render himself into the custody of the sheriff," etc.

The right of the surety to surrender his principal extends eight days from the commencement of suit on the recognizance, after the timely and regular issue and return "not found" of a body execution. If the debt for which the original suit was brought is extinguished by the bankruptcy proceeding, no body execution can ever issue, and the contingency which fixes the liability of the surety can never arise. The case at bar does not present this difficulty. Here, as stated by the United States Supreme Court, a judgment may issue against the principal accompanied by a perpetual stay of execution, and the surety may be compelled to answer according to the terms of his obligation.

The judgment is reversed, and a new trial ordered.

HOOKER, MOORE, McALVAY, and BLAIR, JJ., concurred.

### ON MOTION TO AMEND JUDGMENT.

BROOKE, J. A motion is made in this case to amend the opinion. The case is reported *ante*, 110 (128 N. W. 774). The conclusion of the opinion is: "The judgment is reversed and a new trial ordered." It is now urged by plaintiff, in support of its motion to amend, that the case was tried by the court below upon stipulated facts, and that the only question in the case was one of law, which has been determined adversely to the contention of

defendant, and that, therefore, it is entitled to a judgment without further trial.

The motion is granted, and the opinion will stand amended to read as follows:

"The judgment is reversed, and the case is remanded to the circuit court, where judgment will be entered for the plaintiff in the amount of the judgment in the justice's court, with interest."

HOOKER, MOORE, MCALVAY, and BLAIR, JJ., concurred.