## In re CAMELO.

### (District Court, N. D. New York. April 15, 1912.)

1. BANKRUPTCY (§ 426*)—CLAIMS PROVABLE—EFFECT OF DISCHARGE OF BANKRUPT—"FIDUCIARY CAPACITY."

    An agent, who is intrusted by his principal with beer to deliver to laborers under the supervision of the agent and to collect the pay therefor and pay the money over to the principal, is not acting in a fiduciary capacity within Bankruptcy Act July 1, 1898, c. 541, § 17 (4), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), declaring that a discharge in bankruptcy does not affect a debt created by misappropriation while acting in any fiduciary capacity, but the claim of the principal based on the failure of the agent to turn over money collected is founded on a breach of contract and is provable within section 63a(4); the phrase "fiduciary capacity" implying a fiduciary relation existing previously to or independently of the particular transaction out of which the debt arose, and not embracing debts arising in commercial dealings between principal and agent.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 787–807; Dec. Dig. § 426.*

    For other definitions, see Words and Phrases, vol. 3, pp. 2756–2760; vol. 8, p. 7663.]

2. BANKRUPTCY (§ 426*)—CLAIMS PROVABLE—EFFECT OF DISCHARGE OF BANKRUPT—"FIDUCIARY CAPACITY."

    Where the superintendent in charge of laborers purchased beer for them from time to time as authorized by them and deducted from their wages sufficient to pay the seller of the beer, the fiduciary relation created, if any, was between the laborers and the superintendent, and the seller could not rely thereon to establish a fiduciary relation between himself and the superintendent, within Bankruptcy Act July 1, 1898, c. 541, § 17(4), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428).

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 787–807; Dec. Dig. § 426.*]

3. BANKRUPTCY (§ 391*)—PROVABLE CLAIMS—RIGHT OF CREDITOR.

    Where a creditor of a bankrupt does not prove his provable claim in the bankruptcy court, he may sue thereon in a state court subject to the power of the court of bankruptcy to stay prosecution thereof, until the question of the bankrupt's discharge has been disposed of, and subject to the defense of a discharge if obtained.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 637–655; Dec. Dig. § 391.*]

---

**4.** Bankruptcy (§ 391*)—Actions Against Bankrupt in State Court—Stay by Order of Bankruptcy Court.

The court of bankruptcy will stay only the prosecution of actions in a state court against the bankrupt where the causes of action are based on claims provable in bankruptcy and from which a discharge in bankruptcy will be a release.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 637–655; Dec. Dig. § 391.*]

In the matter of Nicholas Camelo, a bankrupt. Application for an order to vacate an order staying the prosecution of a suit in the Supreme Court of the state of New York by Joseph Payette and another as plaintiffs against the bankrupt. Denied.

D. H. & F. C. Agnew, for the motion.

Sholes & Norton, opposed.

RAY, District Judge. November 18, 1911, Nicholas Camelo was adjudged a bankrupt. About February 23, 1912, Joseph Payette and Julius Mendelsohn, as plaintiffs, commenced an action against said Nicholas Camelo, as defendant, in the Supreme Court of the state of New York, alleging: (1) The partnership of the plaintiffs, and that in July, August, and September, 1911, Camelo was the superintendent in charge of the construction of a section of state road in the town of Mooers, Clinton county, N. Y., and that he had in his charge a large number of Italian laborers under his supervision. (2) That at such times the sale of and trafficking in intoxicating liquors in said town was prohibited by law, and that Camelo "entered into an agreement with said laborers on or about July 31, 1911, by the terms of which defendant (Camelo) was authorized by said laborers, as their agent, to purchase for them lager beer from time to time thereafter, and to deduct from their wages sufficient to pay therefor from time to time and to pay said money so deducted from their wages in settlement for said lager beer; that said defendant, as such agent for said laborers, procured lager beer for them from plaintiffs (in said action) at the agreed price and value of $354.86." (3) That said Camelo deducted sufficient money from the wages of said Italian laborers to pay for such beer and paid over to the plaintiffs $150 thereof, leaving a balance of $204.85, which he (Camelo) neglected and refused to pay over "to plaintiffs, though demand was made therefor before the commencement of this action; that defendant has unlawfully appropriated and converted said balance to his own use."

The complaint then alleges, evidently referring to the same beer transaction: That from and after July 31, 1911, down to and including September 8, 1911, the plaintiffs intrusted to defendant, as agent of plaintiffs, and defendant received from plaintiffs as such agent, lager beer owned by plaintiffs of the agreed value and reasonably worth the sum of $354.85 to be delivered from time to time to the said laborers under Camelo's supervision and charge at Mooers, N. Y., and that payment for such beer was to be deducted from time to time out of the wages of such laborers, and by Camelo as such

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

agent of plaintiffs forwarded and paid to the plaintiffs as soon as col-lected. That defendant collected all of such money, $354.85, and paid over to plaintiffs $150, leaving a balance of $204.85 still past due and owing and belonging to the plaintiffs. That on demand the said Camelo has neglected and failed and refused to pay over "said balance of $204.85, so intrusted to defendant (Camelo), or any part thereof, although demanded, and that the said Camelo has unlawfully, illegally, and wrongfully converted same to his own use." Judgment is demanded for said sum of $204.85.

There is no allegation that the beer was converted. The fair interpretation of the later allegations is that Camelo delivered the beer of plaintiffs to the laborers at Mooers in violation of law and collected the pay from such laborers and then converted the money to his own use to the extent of $204.85. If so as agent of the plaintiffs and engaged in selling beer for them in violation of law, Camelo collected $204.85 for such beer and converted it to his own use.

The bankrupt says (1) that plaintiffs cannot collect, as the transaction alleged was illegal and the acts done in violation of law, and (2) that, conceding the allegations of the complaint to be true, he was not acting in any fiduciary capacity, and that the claim is one provable and dischargeable in bankruptcy; one from which a discharge in bankruptcy will be a release, and that the prosecution of the action should be stayed until the question of discharge is determined.

The claim of the plaintiffs, as a contract debt due and owing by the bankrupt to the said plaintiffs, was duly scheduled, and the said plaintiffs have had due notice of all the proceedings in bankruptcy. They are therefore parties to the proceedings in bankruptcy. It does not appear that they had proved their claim in bankruptcy.

[1] By subdivision 4 of section 17 of the Bankruptcy Act, "debts not affected by a discharge" include those which "were created by his fraud (that of the bankrupt), embezzlement, misappropriation or defalcation, while acting as an officer, or in any fiduciary capacity." Clearly Camelo was not acting as an officer. Was he acting in a fiduciary capacity?

It is settled by the Supreme Court of the United States (Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147) that the fraud, embezzlement, or misappropriation must have been by one acting in a fiduciary capacity. Is an agent intrusted by his principal with beer to deliver to laborers under his supervision and collect the pay therefor and pay the money over to such principal acting in a "fiduciary capacity" within the meaning of the section referred to? I think not.

In Crawford v. Burke, supra, it was held that a commission merchant and factor who sells for others is not indebted in a fiduciary capacity within the bankruptcy act by withholding the money received for property received and sold by him, and that the same rule applies to a broker carrying stocks on a margin and who sells same and fails to pay over the proceeds to his principal. See Chapman v. Forsyth, 2 How. 202, 11 L. Ed. 236; Neal v. Clark, 95 U. S. 704, 708, 24 L. Ed. 586; Hennequin v. Clews, 111 U. S. 676, 679, 4 Sup. Ct. 576, 28 L. Ed. 565; Noble v. Hammond, 129 U. S. 65, 68, 9

Sup. Ct. 235, 32 L. Ed. 621; Upshur v. Briscoe, 138 U. S. 365, 375, 11 Sup. Ct. 313, 34 L. Ed. 931. Under the Bankruptcy Act of 1867, R. S. 5117, the rule was different because of the language of that act, as is clearly pointed out in Crawford v. Burke, supra, at page 189 of 195 U. S., 25 Sup. Ct. 9, 49 L. Ed. 147. But under that act the words "fiduciary character" had the same meaning as now. Mulock v. Byrnes, 129 N. Y. 23, 25, 29 N. E. 244. In that case it was held that a judgment recovered on an indebtedness incurred by defendant because of his failure to pay over rents collected by him as agent was barred by the discharge in bankruptcy; that such a debt is not one incurred while acting in a fiduciary capacity within the meaning of the bankruptcy act (U. S. R. S. § 5117). I think it not necessary to quote largely from the cases.

In Palmer v. Hussey, 87 N. Y. 307, affirmed 119 U. S. 96, 7 Sup. Ct. 158, 30 L. Ed. 362, the court said:

"'It is settled in this court, in supposed accordance with the doctrine of the federal courts, that the "fiduciary capacity" intended by the Bankrupt Act relates to technical trusts, not merely such as the law implies from the contract, but actual and expressly constituted,' citing Hennequin v. Clews. And, further, that the evidence and the affidavits in the case under consideration 'show no other or different trust or fiduciary relation than such as may be said always to exist in a case of agency. In every such case there is an element of trust and confidence, so that a breach of duty may be said to be a breach of trust; but the agent is, nevertheless, not a fiduciary within the meaning of the Bankrupt Act.'"

In Bryant v. Kinyon, 6 Am. Bankr. Rep. 237, 127 Mich. 152, 86 N. W. 531, 53 L. R. A. 801, the court held:

"'The fiduciary relation referred to in section 17 implies one existing previously to or independently of the particular transaction out of which the debt arises; and where the debt was contracted by the bankrupt under an agreement with the claimant prior to bankruptcy whereby bankrupt was to sell a certain commodity for the claimant and to pay a proportionate amount out of the sale at a given price, and it was further provided that the title to the property should remain in the claimant with all rights of possession until the same should be sufficiently paid for, a failure by the bankrupt to remit the amount due by him is not a debt created by the bankrupt while acting in a fiduciary capacity, and is dischargeable."

See, also, to the same effect, Knott v. Putnam (D. C.) 6 Am. Bankr. Rep. 80, 107 Fed. 907.

In 5 Cyc. 398, 399, speaking of the act of 1898, as amended, it is said:

"The phrase 'fiduciary capacity' implies a fiduciary relation existing previously to or independently of the particular transaction out of which the debt arose. It does not embrace debts arising in commercial dealings between principal and agent or factor for selling goods on commission."

There are numerous cases holding that agents employed for a particular transaction do not occupy a fiduciary capacity. Woodward v. Towne, 127 Mass. 41, 34 Am. Rep. 337; Cronan v. Cotting, 104 Mass. 245, 6 Am. Rep. 232; Gibson v. Gorman, 44 N. J. Law, 325. The position in such case is quite different from that of an attorney at law engaged generally in the performance of his professional duties, or that of an executor or an administrator, or a guardian of the person and property of a minor or an incompetent person. In

all cases of agency there is trust and confidence reposed, as indeed there is in all sales on credit; but the bankruptcy law refers to those technical trusts such as grow out of the relation of executor, administrator, guardian, trustee, and the like. See opinion in Upshur v. Briscoe, 138 U. S. 375, 376, 11 Sup. Ct. 313, 34 L. Ed. 931.

The question is settled, I think, in Re Adler (C. C. A. 2d Circuit), 18 Am. Bankr. Rep. 240, 152 Fed. 422, 81 C. C. A. 564, and in Ennis v. Stoppani (D. C.) 22 Am. Bankr. Rep. 679, 171 Fed. 755. See, also, Collier on Bankruptcy (8th Ed.) 328. Tindle v. Birkett, 183 N. Y. 267, 76 N. E. 25, affirmed 205 U. S. 183, 27 Sup. Ct. 493, 51 L. Ed. 762, is to the same effect. It may be noted that Tindle v. Birkett overrules Frey v. Torrey, 70 App. Div. 166, 75 N. Y. Supp. 40, affirmed 175 N. Y. 501, 67 N. E. 1082, and this is recognized by the Court of Appeals in Tindle v. Birkett, 183 N. Y. 271, 76 N. E. 25.

[2] The first allegations of the complaint make Camelo agent for the laborers mentioned, and the breach of trust, so terming it, was one of which they alone could complain. The later allegations, however, set up an agency between Camelo and the plaintiffs. The effect of the allegations showing the illegality of the transaction need not be considered. The question is: Assuming that a cause of action arising before bankruptcy exists, is it one from which a discharge in bankruptcy would be a release? If so, it is the duty of this court to continue the injunction against the further prosecution of the action until the question of the bankrupt's discharge is finally determined, to the end that if the bankrupt is discharged he may plead such discharge in bankruptcy in defense of the cause of action set up in the complaint referred to. The claim is founded upon and grows out of a breach of contract and is clearly provable. Section 63a(4); Tindle v. Birkett, 205 U. S. 183, 186, 27 Sup. Ct. 493, 51 L. Ed. 762.

[3] The plaintiffs may prove their claim in the bankruptcy court. If they do not, when the question of the discharge of the bankrupt from his provable debts has been determined, assuming he applies for a discharge, the defendant may set up his discharge, if one is granted, and it will be a defense to this action. The bankrupt must apply for his discharge within 18 months at most, from his adjudication. If no application for a discharge is made, the plaintiffs may thereafter proceed to judgment. If one is made and a discharge granted, still the plaintiffs may then proceed with this action, if they so elect, and take their chances of the claims having been discharged. If a creditor desires to share in distribution, he must come in and prove his claim in the bankruptcy court. If his claim is unliquidated, it may be liquidated in such manner as the bankruptcy court directs. If a creditor elects not to prove his claim and share in distribution, he may bring his action in the state court subject to the power of the court of bankruptcy to stay its prosecution until after the question of the bankrupt's discharge has been finally disposed of, when the state court will dispose of it as the law demands.

[4] The court of bankruptcy only stays suits on causes of action or alleged causes of action provable in bankruptcy and from which

the discharge in bankruptcy will be a release. It is for the reason this is such an action that the stay is granted.

There will be an order enjoining and restraining the plaintiffs, their attorneys and agents, from further prosecuting the action referred to until the question of the bankrupt's discharge has been finally determined.