José E. Muñoz, demandante apelado, *v.* Pan American Life Insurance Co., demandada apelante.

No. 4802.—*Sometido:* Febrero 5, 1931. *Resuelto:* Abril 30, 1931.

*O. B. Frazer y R. Castro Fernández,* abogados de la apelante; *Buenaventura Esteves,* abogado del apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Este es un caso sobre cobro de una póliza de seguro de vida cuya prima primera fué pagada, al hacerse la solicitud, al agente de la compañía, sin que se haya demostrado que la póliza se llegara a expedir. Fué resuelto por la corte de distrito en favor del demandante. Apelado por la demandada, tocó en turno al juez que suscribe, que presentó al tribunal un extenso memorándum en pro de la confirmación de la sentencia recurrida. El memorándum fué leído en la sala de consultas y quedó sometido al estudio de los jueces. Se discutió varias veces, prevaleciendo al fin la opinión contraria. Personalmente sigo creyendo que la sentencia de la corte de distrito en su esencia es justa, pero me veo obligado a reconocer que tal como se planteó el debate y habiendo en consideración lo único que logró probarse por el demandante, no puede, de acuerdo con la ley y la jurisprudencia, obligarse a la compañía demandada al pago de la póliza que se reclama.

Los hechos, en resumen, son los que siguen: Una compañía de seguros de vida de Luisiana, la Pan American Life Insurance Company, hace negocios en Puerto Rico. Su agente General lo es Clifford S. Foy. Tiene su oficina en San Juan. En la Isla trabajan en relación con el Agente General, agentes solicitantes. Uno de ellos, Sampiero Giordani, se comunicó con el demandante José E. Muñoz y tramitó para él y su esposa María Ruiz Laguerre una póliza mancomunada por $5,000 que fué expedida por la compañía y que Muñoz no quiso aceptar por no haberse librado en armonía con la solicitud. Entonces el agente Giordani logró que Muñoz, el 5 de mayo de 1926, formulara una solicitud para una póliza por $2,500 para su esposa solamente, pagando ese mismo día como prima $145.12 por medio de un cheque que fué cobrado por Giordani. Cuando se solicitó la póliza de $5,000, se practicó y envió a la compañía el examen médico de Muñoz y de su esposa. Cuando se solicitó la de $2,500 y se pagó la prima, no se practicó un nuevo examen físico. Alega Muñoz que de acuerdo con instrucciones del propio

agente general, el primer examen era válido si la solicitud se hacía antes del 13 de mayo de 1926 y que como la solicitud se hizo el 5, ningún nuevo examen fué practicado ni requerido. La compañía trató de probar en el juicio que fué la falta del nuevo examen la que motivó la dilación y la no expedición de la póliza. Parece conveniente transcribir desde ahora y en lo pertinente, la carta del Agente General al demandante. Está fechada en San Juan, en mayo 12, 1926. Dice:

"Estimado Sr. Muñoz: Estoy en recibo de su grata carta del 11 de mayo, explicándome las razones porqué la póliza que el Sr. Giordani le entregó no fué lo que Ud. quería, y siento mucho que ese trastorno le ha pasado a Ud. Ahora, la póliza de vida 25 pagos, con cupones, le costaría a Ud. solamente $334.10 anualmente para $5,000, y $167.05 para $2,500. . . . . . Ahora, como el examen físico de usted fué hecho el día 29 de enero, la compañía nos ha limitado hasta el día 13 de mayo para entregar y cobrar esta póliza; así es que le ruego que me remese su cheque para la cantidad de $167.05, para $2,500, o $334.10 para $5,000, para que yo pueda devolver la póliza a la compañía junto con su remesa para ser cambiado para una póliza de vida, 25 pagos, con cupones, doble indemnización y bono de perseverancia, como está explicado arriba. Si esperamos hasta después del día 13 entonces tenemos que mandar también un nuevo examen, lo cual será una molestia para usted y para el médico. Según la información que hemos recibido de Ud. Sr. Muñoz, la póliza de $2,500 será muy pequeña y a pesar de que nosotros estamos dispuestos a hacer lo que Ud. quiere en el asunto, estoy seguro que Ud. quedaría mucho más satisfecho con la póliza de $5,000. Le costaría solamente $334.10, lo cual verdaderamente no es un gasto, sino un ahorro, y lo más que puede Ud. ahorrar de esta manera, lo mejor no solamente para Ud. pero también para su familia. También debe de tomar en consideración que la compañía ya ha aceptado el examen hecho el otro día y está dispuesta a expedirle hasta $10,000 sin necesidad de ningún otro examen por ahora, mientras que si Ud. tomó menos ahora con la idea de aumentarlo después, puede pasar que Ud. no se encontrará en tan buena salud como ahora, y sería más difícil conseguirlo."

La carta escrita el 12 de mayo no revela con absoluta claridad que el Agente General conociera la nueva solicitud del 5, pero habla de que según la información recibida, la

póliza de $2,500 sería muy pequeña, lo que parece demostrar que el agente Giordani se comunicó con el Agente General Foy. Además, si bien en la carta se insiste en recomendar otra cosa, se dice: "Nosotros estamos dispuestos a hacer lo que usted quiera en el asunto." Se ha insistido en que el nuevo examen no era necesario porque se partía de la base del seguro del esposo y la esposa, pero el argumento no tiene gran fuerza, porque lo mismo quedaba asegurada la vida de la esposa en una póliza que en otra. A nuestro juicio el conflicto fué bien resuelto por la corte sentenciadora. Parece en verdad que los agentes partieron de la base de la no necesidad del nuevo examen para la tramitación de la nueva solicitud. Una segunda carta del Agente General al demandante fechada en San Juan, en mayo 17, 1926, robustece esa conclusión. Dice:

"Estimado Sr. Muñoz: Estoy en recibo de su carta del 14, donde me dice que la póliza de $2,500, bajo el plan de 25 años, saldado a los 14 años, es todo que quiere Ud. por ahora. Es muy probable que dentro de poco tiempo recibiremos aquella póliza, y estoy seguro que Ud. lo encontrará exactamente lo que pidió."

¿Qué pasó entre el Agente General y la compañía? Nada se sabe con certeza. Lo cierto es que pasaron los meses y el demandante no recibió la póliza, y que llegó el 24 de febrero de 1927 en que la esposa murió sin que la póliza estuviera en poder del demandante. Reclamó éste directamente a la compañía y el resultado de sus gestiones es el que muestran las dos cartas que a continuación se transcriben, una del subsecretario de la compañía y otra del Agente General Foy. Son así:

"Muy señor mío: El Sr. Ellis, nuestro Presidente, me ha referido su carta del 15 de marzo, con instrucciones de darla mi mejor atención. La compañía no tiene ningún record de haber emitido una póliza sobre la vida de su esposa, señora María Ruiz de Muñoz. Hallo que el 19 de abril de 1926 emitimos dos pólizas de $5,000 cada una, bajo el plan dotal de veinte años con cupones, de forma mancomunada, sobre la vida de Ud. y su señora, pero estas pólizas fueron

devueltas para su cancelación, y nunca han estado en vigor. Más tarde el Sr. Foy nos escribió solicitando la emisión de una póliza sobre la vida de su esposa, y en contestación dijimos que para poder considerar el asunto, requeriríamos que su señora fuese examinada nuevamente. El informe del reconocimiento nunca nos llegó, y entonces cerramos nuestros archivos. Me permito referir su carta del 15 de marzo al Sr. Foy, y tengo la seguridad de que dicho señor dará su atención inmediata al asunto. El Sr. Foy goza de la completa confianza de los oficiales de esta compañía, y si su cheque por $146.12 fué recibido por él en relación con una solicitud hecha por su esposa para póliza de $2,500, sabemos que inmediatamente hará la correspondiente devolución.''

    *      *      *      *      *      *      *

''Estimado Sr. Muñoz: Con referencia a una carta escrita por usted a Mr. Ellis, Presidente de nuestra Compañía, el día 15 de marzo, deseo informarle que ellos dicen en 'su carta de contestación, que antes de que la póliza para su señora pudiera emitirse fué necesario un nuevo examen físico el cual nunca fué recibido. En vista de esto, y a demanda de la compañía nuestros agentes Sres. Giordani y Fernández quienes tomaron la solicitud, nos han mandado el dinero cobrado y le estoy incluyendo mi cheque No. 5569 en la suma de $146.12 como devolución de tal depósito hecho por usted a ellos. Siento mucho saber que ha fallecido 'su señora, y siento más todavía que la póliza nunca fué extendida por la compañía y así perdió usted la protección que hubiera gozado.''

Entonces fué que el demandante inició este pleito, pidiendo a la corte que dictara sentencia condenando a la compañía al pago de la póliza en cuestión.

Durante el juicio la póliza base del contrato cuyo cumplimiento se pide, no pudo presentarse. En realidad todo induce a creer que jamás fué expedida por la compañía. Se presentó por ésta la solicitud y se advierte una discrepancia substancial entre ella, la demanda y aun la sentencia, en cuanto a los beneficiarios, aparte de que no contiene todos los datos que la misma parece exigir.

En su alegato la demandada apelante señala y argumenta minuciosamente los siguientes errores:

''1. La Corte inferior cometió error fundamental al declarar

probado que existía un contrato de seguro por el cual la demandada apelante tenía asegurada la vida de la señora del demandante apelado.

"2. La Corte inferior cometió error fundamental al decidir que el alegado contrato de seguro fué hecho de palabra, aceptado y ratificado por el agente de la demandada apelante.

"3. La Corte inferior cometió error fundamental al decidir que el recibo del pago del premio nunca fué entregado.

"4. La Corte inferior cometió error fundamental al declarar aceptada la solicitud de seguro por la retención y uso del premio.

"5. La Corte inferior cometió error fundamental al decidir que era el deber de la demandada aceptar o rechazar la solicitud con razonable prontitud y al dejar de rechazarla en un período razonable de tiempo, surge la presunción legal de que fué aceptada la solicitud.

"6. La Corte inferior cometió error fundamental al aplicar la teoría del 'estoppel' a la demandada apelante al decidir que ésta hizo creer al demandante apelado que la vida de su esposa estaba asegurada.

"7. La Corte inferior cometió error fundamental al decidir que el beneficiario en el alegado contrato de seguro era y es el demandante apelado."

No nos detendremos a analizar los errores señalados uno a uno. Los hemos transcrito porque sintetizan todas las cuestiones envueltas y ponen de manifiesto su importancia. Para revocar la sentencia apelada, bastará decir que éste no es un pleito sobre daños y perjuicios contra los agentes de la compañía en Puerto Rico o contra la propia compañía, basado en los que pudieran haberse causado a dicho demandante por la conducta de los expresados agentes o de la compañía. Se parte de la base de la existencia de una póliza y precisaba demostrar que la póliza existió o debió necesariamente existir.

No constan las facultades del Agente General de la compañía y sería arriesgado decidir que las tenía para obligar a la compañía a virtud de sus actos en un caso como el presente.

Pero aun suponiendo que las tuviera, queda el hecho de

la no expedición de la póliza por parte de la compañía, de la no aceptación por su parte de la solicitud y en su consecuencia de la no existencia del contrato cuyo cumplimiento se pide.

Lo más favorable al demandante puede encontrarse en el pasaje que sigue de la opinión del juez sentenciador:

". . . la corte entiende que era el deber de la demandada aceptar o rechazar la misma con razonable prontitud y que al dejar de rechazarla en un período razonable de tiempo surge la presunción legal de que fué aceptada.

"Un asegurador a quien se hace una solicitud para que se expida una póliza, debe aceptarla o rechazarla con razonable prontitud, y al dejar de rechazarla dentro de un período razonable la ley infiere que ha habido una aceptación. Robinson v. U. S. Benev. Society, 132 Mich. 693.

"Por otra parte, la aceptación de una solicitud de seguro puede inferirse ordinariamente de la retención y uso del premio (14 R.C.L. 895), puesto que el pago del premio es la principal y tal vez la única consideración que mueve al asegurador y sobre la cual descansa la promesa de una indemnización. (14 Cal. Jur. 419). Y sobre este punto encontramos también resuelto lo siguiente:

"El recibo y retención de la prima no indica necesariamente la aceptación de la solicitud de seguro; más, bajo algunas circunstancias puede inferirse una aceptación del recibo y retención o inversión de la prima. 32 C. J. 105 51 L.R.A. (N. S.) 873."

Pero, ahondando en el asunto, encontramos que no está expuesta la totalidad de la ley sobre la materia. Tomando el párrafo completo de una de las citas, por ejemplo, la de R.C.L., resulta que dice:

"Si bien se ha dicho que es deber de un asegurador a quien se le ha presentado solicitud de póliza aceptarla o rechazarla dentro de una prontitud razonable, y que al dejar de rechazarla dentro de un período razonable la ley implica una aceptación (Robinson v U. S. Benev. Society, 132 Mich. 695), el peso abrumador de las autoridades sostiene la regla de que la mera demora en estudiar una solicitud de seguro no puede interpretarse como una aceptación de la misma, especialmente cuando el solicitante propiamente no debe ser objeto de seguro." 14 R.C.L. 896.

Y aquí se hizo un gran énfasis en que la señora asegurada estaba en cinta cuando solicitó la póliza, y en la prohibición de asegurar personas en ese estado que imponían sus reglas a la compañía.

Hemos hecho, además, un examen de los casos en que el texto de R.C.L. se basa, y si bien pudieran encontrarse detalles en pro de un caso como el del demandante, no serían decisivos. La realidad es que no sería posible, atendidas todas las circunstancias concurrentes, basar en el mero transcurso del tiempo sin que la compañía actuara en una forma o en otra y comunicara su actuación al asegurado, la existencia de la póliza cuyo cumplimiento se exige.

A virtud de todo lo expuesto, *debe revocarse la sentencia apelada y dictarse otra declarando la demanda sin lugar, sin especial condenación de costas.*